Commonwealth *vs.* Lloyd Matthews.

No. 97-P-2337.                        .

Suffolk. June 18, 1998. - September 11, 1998.

Present: Jacobs, Dreben, & Flannery, JJ.

*Practice, Criminal,* New trial, Waiver, Argument by counsel, Comment by
    judge, Argument by prosecutor. *Evidence,* Failure to produce witness,
    Failure to produce evidence.

At a criminal trial, no substantial risk of a miscarriage of justice was created
    by defense counsel's comment during closing argument, which suggested
    that the jury approach deliberations from the point of view of the defendant,
    or by the judge's response, which suggested that jurors put themselves in
    the place of both the victim and the defendant, where neither remark was
    an improper appeal to the sympathy of the jury. [446-447]
At a criminal trial, the prosecutor's cross-examination of the defendant and
    remarks during closing argument, which improperly commented on the
    defendant's failure to call certain alibi witnesses, created no substantial
    risk of a miscarriage of justice, in light of the powerful evidence against
    the defendant [447-450]; further, the prosecutor properly cross-examined
    the defendant and commented during closing argument about the lack of
    record evidence to corroborate the defendant's alibi [450].
This court concluded that certain issues raised by a criminal defendant in an
    appeal from the denial of his third motion for a new trial were sufficiently
    similar to those raised in prior proceedings so as to have been disposed of
    in those proceedings. [450-451]

Indictments found and returned in the Superior Court Depart-
ment on November 13, 1986.

A motion for a new trial was considered by *Vieri Volterra,* J.

*Lloyd Matthews,* pro se.

*Nancy L. Hathaway,* Assistant District Attorney, for the Com-
monwealth.

Dreben, J. Eleven years have elapsed since the date of the

defendant's convictions,[1] and this is an appeal from the denial of his third motion for a new trial. Even with the lenity expressed in note 2, *infra*, the defendant has a "heavy" burden to show that because of the claims raised for the first time in his motion, "there is a substantial risk that the outcome of the trial[] would have been different." *Commonwealth* v. *Amirault*, 424 Mass. 618, 651 (1997). The motion judge, who was not the trial judge and who heard no evidence, determined that the issues raised in the defendant's motion were either decided in the defendant's previous appeals or were waived by not having been raised. See Mass.R.Crim.P. 30(c)(2), 378 Mass. 901 (1979); *Commonwealth* v. *Deeran*, 397 Mass. 136, 139 (1986).

The standard for our review is "the same standard . . . that motion judges should use . . . [and the] 'discretionary power to give relief from such a waiver by permitting such issues to be raised for the first time by a motion for a new trial should be exercised only in those extraordinary cases where, upon sober reflection, it appears that a miscarriage of justice might otherwise result.' " *Commonwealth* v. *Curtis*, 417 Mass. 619, 626 (1994), quoting from *Commonwealth* v. *Harrington*, 379 Mass. 446, 449 (1980). See also *Curtis, supra* at 624 n.4. Obviously, with each succeeding motion for a new trial, the community's interest in finality comes more to the fore.[2]

We turn to the issues raised by the defendant.

---

[1] The defendant was convicted of indecent assault and battery on a person fourteen or more; armed assault in a dwelling house with intent to commit a felony, to wit: larceny in a building; and forcible rape of a child under sixteen.

[2] The defendant ably argues that his second motion for a new trial which was filed pro se did not raise the issues now presented because he was in a section of M.C.I., Cedar Junction, which did not allow him to have access to sufficient legal materials. He faults appellate counsel who filed the first motion for a new trial (which was consolidated with his direct appeal), and claims that that counsel was ineffective in not raising the issues he now raises. In view of these arguments, and because "we cannot rid ourselves by process alone of the possibility of error and of grave and lingering injustice," *Commonwealth* v. *Amirault*, 424 Mass. at 637, we will treat the new issues raised in this motion as if they were raised in a first postappeal motion for a new trial. See *Commonwealth* v. *Hallet*, 427 Mass. 552, 554 (1998). For purposes of this case, we assume but do not decide that, as asserted in his affidavit accompanying his motion for a new trial, the defendant's access to legal materials was insufficient and that he thereby avoids waiver of these issues by his failure to raise them in his second (and pro se) motion for a new trial. To decide the question of sufficient access would require a factual determination.

Any issues raised in the defendant's previous motions for a new trial or in his appeal are, of course, barred by the prior adjudications. The defendant not

1. Relying on *Commonwealth* v. *Sevieri*, 21 Mass. App. Ct. 745 (1986), the defendant urges that defense counsel's statement in closing argument, objected to by the prosecutor, together with the judge's response created a substantial risk of a miscarriage of justice. In his closing, defense counsel pointed out that the defendant was not arrested until thirteen days after the victim had identified his photograph at the police station, although his address was known, and that at that late date, without a daily diary, it was difficult for him to reconstruct his whereabouts on the day of the incident (May 15, 1986). Counsel suggested that the defendant was telling the truth because he didn't say that he worked at his stepfather's automobile repair shop every day, but said "I usually do." Counsel asked,

> "But how many of you people keep a diary? I ask you, what would you have done if you were confronted as Mr. Matthews was? What would you have done?"

The prosecutor objected on the ground that defense counsel is "putting the jury in the place of the defendant."

The judge responded:

> "I think that's somewhat common. The jury frequently puts themselves in the place of the defendant and puts themselves in the place of the victim, to make the decision. That's proper argument."

Defense counsel continued: "I suggest, how many of you have a diary that say [*sic*] where you were a particular day? I suggest that Mr. Matthews was candid."

There was no error in defense counsel's argument. Unlike the statement in *Commonwealth* v. *Sevieri*, 21 Mass. App. Ct. at 753-754 — "[p]ut yourself in that position, when a man's got you by the throat, dragging you into a bedroom" — it was not an appeal to sympathy, but rather an attempt to invoke logic and common sense. Although the judge spoke of jurors putting themselves in the place of the victim, his comments were balanced by suggesting that jurors place themselves also in the position of the defendant. "[I]n light of their over-all impact on

---

only appealed from each of the two denials of his motions for a new trial, but also filed a petition for habeas corpus in the Federal District Court. Although the District Court judge granted relief (based on the recommendation of a magistrate), the Court of Appeals reversed, with one judge dissenting. *Matthews* v. *Rakiey*, 54 F.3d 908 (1st Cir. 1995).

the jury," see *Commonwealth* v. *Grant*, 418 Mass. 76, 85 (1994), quoting from *Commonwealth* v. *Sellon*, 380 Mass. 220, 231-232 (1980), they, too, were not a prejudicial appeal to sympathy. In any event, they did not create a substantial risk of a miscarriage of justice.

2. The defendant's second claim is more troublesome. At trial, the defendant on direct examination testified that he usually worked at an auto shop owned by his father (stepfather) and that he had worked with his friend Christopher Cross on reconstructing a car during May, 1986. He also testified that his stepfather was in Georgia, that Cross, although he had agreed to testify, was in the Marines, and that he (the defendant) had been incarcerated and had only been informed the day before the trial that the trial would commence the following day.

On cross-examination, the prosecutor asked questions eliciting answers that indicated that neither the stepfather nor Cross was in the courtroom, that the defendant did not have any records (W-2 forms or income tax returns) of his employment at the auto shop, that he did not have a bill of sale or any record that he owned the Lincoln car he allegedly had reconstructed, that he had no records or photographs in court relating to the sale of the Lincoln, and did not know to whom his stepfather had sold it, only that it was to "one of his friends."

In closing, the prosecutor argued:

> "Now, in contrast to the honest and decent way that [the victim] projected herself, you have the story of the defendant, Lloyd Matthews, who got up there and told you a very, very vague story about how he allegedly was working at an auto garage.
>
> "He referred to witnesses, John Wornum [stepfather], and Rufus Wornum [stepfather's brother], Chris Cross, people who supposedly worked with him at that garage, all missing witnesses. None of them were here to back up his story, not one.
>
> "No documentation to prove that he worked there, no pay stubs, no income tax records, nothing. All you have is a vague, vague story from [the defendant] that he worked at a vague garage, working on a vague Lincoln, making vague repairs. Nothing to back it up."

The cross-examination and the foregoing closing remarks

were improper with respect to the missing witnesses. As stated in *Commonwealth* v. *Schatvet*, 23 Mass. App. Ct. 130, 134 (1986), the rule is:

> "Where a party has knowledge of a person who can be located and brought forward, who is friendly to, or at least not hostilely disposed toward, the party, and who can be expected to give testimony of distinct importance to the case, the party would naturally offer that person as a witness. If, then, without explanation, he does not do so, the jury may, if they think reasonable in the circumstances, infer that that person, had he been called, would have given testimony unfavorable to the party."

See *Commonwealth* v. *Franklin*, 366 Mass. 284, 292 (1974). To argue that an inference is to be drawn against the opposing party for failure to call a witness, "the proper practice is first to obtain the permission of the trial judge to do so." *Commonwealth* v. *Vasquez*, 27 Mass. App. Ct. 655, 658 (1989). See *Commonwealth* v. *Melendez*, 12 Mass. App. Ct. 980, 980 (1981). See also *Commonwealth* v. *Earltop*, 372 Mass. 199, 206-207 (1977) (Hennessey, C.J., concurring). In order to be granted such permission, "the trial judge must rule, as matter of law, that there is a sufficient foundation for such inference in the record." *Commonwealth* v. *Vasquez*, 27 Mass. App. Ct. at 658, citing *Commonwealth* v. *Schatvet*, 23 Mass. App. Ct. at 135 (additional citations omitted). "Basic to the inference is the existence of evidence of physical availability of the witness, and the likelihood that he can be produced by summons or otherwise." *Commonwealth* v. *Franklin*, 366 Mass. at 293. In the circumstances where the defendant maintained that he did not have an opportunity to produce the witnesses since he was incarcerated, and had only found out about his trial the previous day, it is highly questionable whether the inference was valid. Moreover, the inference should be invited only in clear cases, and with caution, as the "effect of the comment may be substantial in the jury's deliberations." *Id.* at 294. *Commonwealth* v. *Groce*, 25 Mass. App. Ct. 327, 330 (1988).[3]

One of the important factors in determining whether there is

---

[3]There was also no instruction by the judge, and none was asked for, charging the jury not to draw the inference unless they were persuaded of the truth of the inference beyond a reasonable doubt. See *Commonwealth* v. *Niziolek*,

a clear case for suggesting the inference by the prosecutor is "whether, if the defendant's testimony was truthful, [his stepfather or Cross] would have been able to give testimony important and helpful to his case so that he would in the normal course have been expected to call them as witnesses." *Ibid.* The answer is probably in the negative in this case. If the defendant could not remember definitively that he was at the auto shop, it is unlikely that the other witnesses would have remembered. See *id.* at 331.

In *Groce, supra,* a case upon which the defendant relies, the prosecutor was allowed to comment on the defendant's failure to call witnesses and we reversed the defendant's conviction. There, however, the comment was made over *the defendant's objection* and, unlike the case at bar, the *judge* instructed the jury that they could draw an adverse inference from the witnesses' absence. 25 Mass. App. Ct. at 329. In addition, another instruction was erroneous, and this court concluded that the instructions, "at least when considered in combination," were not harmless. *Id.* at 328.

In this case, the defendant must show much more than that the error was not harmless. He must sustain the burden of demonstrating that this is the "extraordinary case[] where, upon sober reflection, [unless a new trial is granted] it appears that a miscarriage of justice might . . . result." *Commonwealth* v. *Curtis,* 417 Mass. at 626, quoting from *Commonwealth* v. *Harrington,* 379 Mass. at 449.

Although the case against the defendant rested exclusively on the victim-eyewitness's identification, the evidence was powerful. See *Commonwealth* v. *Groce,* 25 Mass. App. Ct. at 329. The victim selected the defendant's picture from a large array of photographs,[4] observed the person who traumatized her in broad daylight, described her assailant to the police, identified him within hours of the incident, and spontaneously exclaimed certainty upon recognizing the defendant's picture. See *ibid.* She also identified him from his unannounced and upsetting appearance at her home several days after the incident. In view of the strength and certainty of her identification, and the defendant's admission on cross-examination that he was "not

380 Mass. 513, 522 (1980); *Commonwealth* v. *Olszewski,* 416 Mass. 707, 724 n.18 (1993), cert. denied, 513 U.S. 835 (1994).

[4]The detective testified that there were six hundred or seven hundred photographs; the victim indicated that there were approximately one hundred.

specifically testifying as to where [he was] on the morning of
May 15, 1986," we do not consider the unfortunate comments
of the prosecutor concerning absent witnesses to have created a
substantial risk that the outcome of the trial would have been
different.

The rules as to when adverse inferences may be drawn from
the failure to produce evidence are less clear than those applic-
able to missing witnesses. See, e.g., Liacos, Massachusetts
Evidence § 5.11, at 254 (6th ed. 1994); 2 Wigmore, Evidence
§ 291(3), at 221-229 (Chadbourn rev. ed. 1979). There was
here no error, let alone a substantial risk of a miscarriage of
justice, in the prosecutor's cross-examining the defendant and
commenting about the lack of record evidence of the defendant's
alleged employment.[5] In *Commonwealth* v. *Silva*, 401 Mass.
318, 327-328 (1987), the Supreme Judicial Court indicated it
was proper to cross-examine a defendant as to whether he could
substantiate an alleged encounter with a person whom the
defendant (a police officer) claimed "wanted to get him" (the
defendant). It was permissible to ask the defendant if he knew
that he could get police records to corroborate the alleged
"contact in an official capacity" with that person. *Ibid.* Cf.
*Commonwealth* v. *Ramey*, 368 Mass. 109, 111-113 (1975). The
court also noted that the prosecutor's comments during summa-
tion regarding the defendant's failure to corroborate the grudge
against him were warranted. *Commonwealth* v. *Silva, supra* at
329 n.12. The challenge to the cross-examination and comments
in the case at bar are governed and disposed of by *Com-
monwealth* v. *Silva.*

3. The defendant also complains about trial counsel's
"contradictory" or inconsistent defenses in arguing both
mistaken identity and that the attack never occurred. This argu-
ment, while not exactly in the form raised in the defendant's
second motion for a new trial and in his habeas corpus petition,
is sufficiently close to those raised in the prior proceedings that
we consider the claims disposed of by those cases. While we
are not bound by the reasoning of the First Circuit, we are
persuaded by it. See *Matthews* v. *Rakiey*, 54 F.3d 908, 917-918
(1st Cir. 1995).

---

[5]It is not clear that the defendant's argument concerning records was made
before the motion judge. It was contained in an amended motion for a new
trial. Although included in the defendant's record appendix, there is no indica-
tion on the docket that the amendment was allowed.

The remaining argument of the defendant is that the judge in his instructions left the jury with the impression that the case was entirely about credibility and that either the defendant or the complainant was lying. This argument, however, was made in his consolidated appeal from his convictions and the denial of his first motion for a new trial. As we there stated, "the defendant claims: (1) that the court's failure to instruct the jury sua sponte on the possibility of honest but mistaken identification created a substantial risk of a miscarriage of justice."[6] We disposed of that argument, pointing out, inter alia, that the judge instructed the jury at the beginning of trial that the witnesses might be honestly mistaken rather than untruthful.

In sum, we conclude that the motion judge did not err in denying the defendant's third motion for a new trial.

*Order denying motion for new trial affirmed.*

---

[6]*Commonwealth* v. *Matthews*, 28 Mass. App. Ct. 1105 (1989).