## COMMONWEALTH *VS.* ALAN JOHNSON.

No. 97-P-661.

Norfolk. November 16, 1998. - March 2, 1999.

Present: PERRETTA, GREENBERG, & SPINA, JJ.

*Identification. Evidence,* Identification, Knife, Refusal to comply with court order, Voice identification, Consciousness of guilt. *Due Process of Law,* Identification. *Robbery. Constitutional Law,* Self-incrimination, Waiver of constitutional rights. *Practice, Criminal,* Comment by prosecutor.

At a criminal trial, the defendant did not demonstrate that the police identification procedures were so unnecessarily suggestive as to create a risk of irreparable mistaken identification. [399-401]

No substantial risk of a miscarriage of justice resulted from the admission of an eyewitness's testimony identifying the defendant as the person who had robbed a bank. [401-403]

At the trial of an indictment for armed robbery, there was no error in the judge's allowing a witness to testify that a knife, found in the defendant's residence, was similar to the one used in the robbery. [403-404]

At a criminal trail, in which the defendant implied in his testimony that he had fully cooperated with a voice identification procedure, the judge correctly allowed the prosecutor to introduce for impeachment purposes evidence that the defendant had failed to appear at the first two scheduled voice lineups [405-406], and the prosecutor properly argued the defendant's refusal to participate as demonstrating the defendant's consciousness of guilt [406].

At a criminal trial, the prosecutor's missing alibi witnesses argument was improper in circumstances in which the defendant had testified that he had no recollection of the day of the robbery or the days immediately proceeding; however, considering the argument in its entirety, the judge's instructions to the jury, and the evidence produced at trial, no substantial risk of a miscarriage of justice was created. [407-408]

INDICTMENT found and returned in the Superior Court Department on March 3, 1995.

The case was tried before *Barbara A. Dortch-Okara,* J.

*Robert M. Greenspan* for the defendant.

*William T. Harrington,* Assistant District Attorney, for the Commonwealth.

Spina, J. The defendant appeals from his conviction of armed robbery while masked, following a jury trial in Superior Court. The defendant claims error in the (1) denial of his motion to suppress evidence of an out-of-court identification; (2) admission of in-court identification testimony by a witness who he now asserts identified him on the basis of a highly suggestive confrontation; (3) admission in evidence of testimony that a knife recovered from the defendant's residence was similar to the one used by the robber; (4) admission in evidence of testimony that the defendant refused to submit to a court-ordered voice identification procedure; and (5) Commonwealth's closing argument regarding a missing witness. We affirm.

We recite facts that the jury could have found, reserving others for discussion of the specific issues raised on appeal. On April 7, 1994, at approximately 7:00 P.M., Evelyn Spears, branch manager of Bay State Federal Savings Bank (bank) in Norwood, went to the glass automatic teller machine (ATM) vestibule at the front of the bank to lock the door. A man wearing a navy blue mask opened the door and ran past her. He jumped over the teller's counter, knife in hand, and took over $3,000 from the cash drawer of Paula Foley, a teller. When Foley asked what he was doing, the man responded, "What do you think I'm doing?" He then leapt back over the counter, ran out the door and walked quickly across the street in front of the bank. As he crossed the street, he removed his mask, allowing Spears to see the back of his head and his profile. She described him to police as a white man, five feet ten inches to six feet tall, of average build with a long, round freckled face and blue eyes, and short, straight, sandy brown hair, neatly cut in the back. She also said he was wearing jeans, a denim jacket, and a navy blue hooded mask with holes for the eyes, mouth and nose.

On March 3, 1995, the defendant was indicted for armed robbery while masked. After a two-day trial in April, 1996, during which he testified, the defendant was convicted.

1. *Denial of motion to suppress out-of-court identification.* The defendant claims that the judge erred in denying his motion to suppress evidence of an out-of-court identification by Spears from a photographic array which he claimed was the product of unnecessarily suggestive police procedures. *Commonwealth* v. *Andrews*, 427 Mass. 434, 438 (1998).

On September 23, 1994, Detective Neil Murphy of the Nor-

wood police department brought an array of eight photographs of white men, including the defendant, to the bank. Foley, the teller, looked through the photographs but was unable to identify the robber. She then brought the photos to Spears's office and remained there while Spears looked through the stack of photographs, segregated two photographs, and ultimately selected the photograph of the defendant as the robber. Murphy, who was also in Spears's office, said nothing to her while she viewed the array. When Spears had selected the defendant's photograph, Murphy confirmed that she selected the suspect's photograph.

After an evidentiary hearing, the defendant's motion to suppress Spears's out-of-court identification was denied. He argues for the first time on appeal that Spears's identification of him from the array was the result of her prolonged exposure to a composite sketch of the robber that was left in Spears's office for the five months between the April robbery and her September photographic identification.

The defendant did not raise the issue of the composite sketch's suggestiveness in his motion below. "A defendant 'is not permitted to raise an issue before the trial court on a specific ground, and then to present that issue to this court on a different ground.' " *Commonwealth* v. *Clark,* 378 Mass. 392, 397 (1979), quoting from *Commonwealth* v. *Flynn*, 362 Mass. 455, 472 (1972). We therefore review the denial of the motion to suppress under the standard of a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Teixeira*, 40 Mass. App. Ct. 236, 239 (1996).

The defendant argues that "if" the sketch resembles him, the fact that it was left with Spears clouds the issue of whether her photographic identification was the result of her memory or a "subconscious assimilation" of the sketch. However, as the defendant concedes, there was no testimony at the motion hearing describing the sketch itself. Nor was there testimony as to who prepared the sketch or how it was prepared. At the motion hearing, Murphy testified only that Spears gave him a physical description of the robber and that a composite sketch was eventually prepared. Spears testified that law enforcement personnel[1] brought the sketch to her the night of the robbery, and that she looked "long and hard" at it but did not totally

---

[1]The Federal Bureau of Investigation was also involved in the investigation of the robbery. Spears did not testify which law enforcement agency brought

agree with its depiction of the robber's physical characteristics. Spears also testified that she looked at the sketch from five to twenty times between the night of the robbery and her subsequent identification from the photo array. The sketch was not introduced at trial or at the motion hearing, although defense counsel had the sketch available to show to Spears during her testimony at the motion hearing.

It is the defendant's burden to prove "that the identification procedures were 'so unnecessarily suggestive and conducive to irreparable mistaken identification' as to deny the defendant due process of law." *Commonwealth* v. *Echavarria*, 428 Mass. 593, 596 (1998), quoting from *Commonwealth* v. *Venios*, 378 Mass. 24, 27 (1979). The defendant has failed to meet that burden on the record before us.[2]

2. *In-court identification.* The defendant claims that Foley's in-court identification should not have been admitted because it was tainted by Murphy's verbal confirmation of Spears's identification, see *Commonwealth* v. *Bonnoyer*, 25 Mass. App. Ct. 444, 451 (1988), and that Foley's identification lacked an independent source, *Commonwealth* v. *Botelho*, 369 Mass. 860, 866 (1976). On the morning of trial, two years and one day after the robbery, the Commonwealth informed the defendant that Foley was prepared to identify the defendant as the robber. Defense counsel alternatively requested a voir dire or a motion to suppress Foley's identification, "to explore the possible suggestiveness of that anticipated identification" and the basis for the identification. A limited voir dire[3] was held before the opening of the evidence and outside the presence of the jury, during which the defendant was sequestered in an anteroom with the doors closed. Counsel made no oral motion to suppress, and voiced no objection at the conclusion of the voir dire. During her direct testimony at trial, Foley identified the defendant as the robber. There was no objection.

---

her the sketch. Murphy did not know whether the sketch had been shown to Spears, nor whether it had been brought to the bank.

[2]The defendant's argument that Murphy's verbal confirmation of Spears's identification tainted her subsequent in-court identification is without merit. Spears made no in-court identification. She stated repeatedly during her direct testimony that she was not certain she had seen the defendant before, and on cross-examination she admitted that, looking at the defendant seated at counsel table, she could "not definitely" say that he was the robber.

[3]The trial judge stated that the hearing would "not be a suppression hearing."

To establish that Foley's in-court identification was inadmissible, the defendant bears the burden of showing, "by a preponderance of the evidence, that the 'witness[] w[as] subjected by the State to a confrontation that was unnecessarily suggestive and thus offensive to due process.' " *Commonwealth* v. *Andrews*, 427 Mass. at 438, quoting from *Commonwealth* v. *Johnson*, 420 Mass. 458, 463 (1995). That determination is to be based on the totality of the circumstances surrounding the confrontation. See *Commonwealth* v. *Andrews*, *supra*; *Commonwealth* v. *Botelho*, 369 Mass. at 867. In the absence of a motion to suppress the identification testimony, or an objection at the time of the in-court identification, we review the error, if any, under the standard of a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Redding*, 382 Mass. 154, 158 (1980); *Commonwealth* v. *Dupont*, 2 Mass. App. Ct. 566, 571 (1974).

Although Foley was present when Murphy indicated that Spears had selected the photograph of the person suspected of committing the crime, there was no evidence that Foley ever saw which photo Spears had selected. Moreover, there is strong evidence of an independent basis for her identification of the defendant, from having observed him during the robbery, and her recollection of that event. In her voir dire testimony Foley said she was within two feet of the robber and remembered his eyes and the knife. She further said that she had "seen his eyes for the past two years." At trial she testified that she had an opportunity to view the defendant's eyes through his mask for a period of time, long enough for her to ask a question and for the robber to answer. Foley stood at close range to the robber, no more than an arm's length away. While there was no testimony regarding the lighting in the bank, it apparently was bright enough for Foley to count the bills in her cash drawer and to see detail in the wooden handle of the knife wielded in her face. She testified that her attention was focused on the robber's eyes and the knife,[4] and she identified the defendant based on her recollection of his eyes. "It is most definitely him. It's his eyes. They are the scariest things to look at." Contrast *Commonwealth* v. *Jones*, 423 Mass. 99, 101-102 (1996) (no

---

[4]While Foley admitted on cross-examination that she had testified before the grand jury to focusing on the robber's voice and the knife, that inconsistency is for the jury to resolve. We can assume, based on the defendant's conviction, that the jury credited Foley's testimony at trial.

independent basis for identification where, although witness saw defendant for three minutes, her attention was not drawn to him when she observed him enter hotel lobby and disappear into elevator, then reemerge ten minutes later and exit the building).

It is permissible for jurors to accord weight and probative value to an identification based solely on a defendant's eyes, rather than a full view of a defendant's face. See, e.g., *Commonwealth* v. *Boiselle*, 16 Mass. App. Ct. 393, 398 (1983) (defendant wearing a ski mask identified by "unique" dark brown eyes); *Commonwealth* v. *Gagne*, 27 Mass. App. Ct. 425, 426 (1989) ("distinctive 'royal blue eyes' "). See also *Commonwealth* v. *Donahue*, 396 Mass. 590, 592 (1986) (defendant's photo picked out of an array solely on the basis of his " 'odd . . . real flat' nose"; judgment reversed on other grounds); *Commonwealth* v. *White*, 422 Mass. 487, 494 (1996) (defendant wearing a "ninja-style" mask identified based only on his eye and nose area).

Foley's identification testimony was a matter for the jury to evaluate. See *Commonwealth* v. *Paszko*, 391 Mass. 164, 172 (1984). Defense counsel subjected Foley to a rigorous cross-examination, highlighting the fact that her in-court identification of the defendant was her first, coming just over two years after the robbery; that she had been unable to select the robber's photograph from the array just five months after the robbery; and that she might have learned from Spears in the course of their workplace discussions about the robbery that Spears said she would be unable to identify the defendant as the robber.

Based on the record before us and the thorough and accurate instructions given the jury regarding identification testimony (including honest but mistaken identification), we perceive no substantial risk of a miscarriage of justice resulting from the admission of Foley's identification testimony.

3. *Similar weapon testimony.* The defendant's claim that the judge erred in allowing Foley to testify as to similarities between a knife retrieved from the defendant's residence and the knife used during the robbery lacks merit. Foley and Debra Leeds, another teller, both testified that the knife brandished by the robber was old looking, had a five- to six-inch blade with a dark wooden handle, and that both blade and handle had a dull

finish.[5] When Foley was shown the knife retrieved by police from the defendant's residence, she testified that, while it was not the actual knife used by the robber, it did "look[] like" the knife she had seen in the robber's hand. Over objection, she testified to recognizing it by the darkness of the wood and the color markings of the rivets in the handle.[6] A limiting instruction was not requested, and none was given either contemporaneously with Foley's testimony or in the final charge.

Under the circumstances, the judge did not abuse her discretion in allowing Foley to testify regarding a knife similar but not identical to the one used by the robber. *Commonwealth* v. *Stewart*, 398 Mass. 535, 541-542 (1986), and cases cited. The knife was illustrative of the knife used in the robbery, hence relevant to the question of whether a dangerous weapon was used, a requirement of the Commonwealth's case. See *id.* at 541. It was also supportive of Foley's recollection of the event. Foley was clear in her testimony that the knife shown to her at trial was not the knife used during the robbery, but resembled that knife in many particulars. The defendant did not request cautionary instructions, and the judge's failure to give any did not create error. See *Commonwealth* v. *Souza*, 34 Mass. App. Ct. 436, 445 (1993); *Commonwealth* v. *Luna, ante* 90, 94 (1998).[7]

4. *Refusal evidence.* The defendant claims that the trial judge erred in admitting evidence that he had refused to participate in a voice identification procedure. At the grand jury's request, the court subpoenaed the defendant to participate in a voice lineup. He twice refused,[8] was held in contempt and eventually incarcerated. In February, 1995, the defendant finally agreed to participate in a voice lineup at the Norwood police station. Foley was in attendance, seated behind a partition. She listened to

---

[5]The knife used by the robber was not recovered.

[6]The knife was marked for identification, but was ultimately not allowed into evidence upon defense counsel's objection. That fact is of no import to our analysis. *Commonwealth* v. *Souza*, 34 Mass. App. Ct. 436, 444 (1993).

[7]The defendant's argument that the admission of Foley's testimony prejudiced him because, absent a limiting instruction, the jury could use it as probative of bad character, is neither meritorious nor adequately argued. Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). See *Commonwealth* v. *Gordon*, 407 Mass. 340, 350 (1990).

[8]The first voice lineup was scheduled for July 11, 1994. When the defendant did not appear, it was rescheduled for the next day.

a number of voices all repeating the same phrase. She was unable to identify the defendant's voice as that of the robber.

The defendant's motion in limine to preclude the introduction of evidence relating to his refusal to participate in the voice lineup was allowed by the trial judge, on the condition that, if the defendant suggested at trial that the Commonwealth had caused the delay in arranging the voice lineup, or if "the door has been opened" in some way, she would reconsider the issue. On direct examination, defense counsel asked the defendant if he had disguised his voice when he spoke at the voice lineup; the defendant responded no. Before beginning cross-examination, the prosecutor approached the bench and argued that the defendant's testimony had "open[ed] the door to any other mechanism that he might have used to influence [the identification] procedure or make it harder for the witness to identify him." The judge agreed, based on the fact that the defendant had broached the issue through his own testimony and created the impression that he fully complied in the lineup.

After eliciting from the defendant on cross-examination, over counsel's objection, that he was implying he had fully cooperated with the voice identification procedure, the Commonwealth then impeached the defendant with his failure to appear at the first two scheduled lineups. Defense counsel did not object.[9] In its closing, the Commonwealth argued that the defendant's refusal to participate was evidence of consciousness of guilt: "Would an innocent man fail to show up on two separate dates when he was asked to participate in a voice identification procedure?" Defense counsel did not object to the consciousness of guilt argument or to the trial judge's refusal to give a consciousness of guilt instruction.[10]

Generally, "the admission of refusal evidence violate[s] a defendant's State constitutional privilege against self-incrimination." *Commonwealth* v. *Hinckley*, 422 Mass. 261, 264 (1996), citing *Commonwealth* v. *Lydon*, 413 Mass. 309, 313-

---

[9]On recross-examination, the Commonwealth again elicited from the defendant that he had failed to participate in the July, 1994, voice identification procedure. Defense counsel did object at that point, but on the ground that the question had already been asked and answered.

[10]At the conclusion of the evidence, defense counsel did bring to the trial judge's attention that "perhaps we should probably discuss an anticipated consciousness of guilt instruction." The judge refused, saying she had not received a request for the instruction. Counsel responded, "Very well," and did not raise the issue again.

315 (1992). By testifying that he did not disguise his voice during the identification procedure, however, the defendant subjected himself to cross-examination as to whether or not he in some way hindered Foley's ability to identify his voice. "When a defendant in a criminal case voluntarily takes the stand he waives his privilege against self-incrimination to the extent that he renders himself liable to cross-examination on all facts relevant and material to the crime with which he is charged." *Commonwealth* v. *Seymour*, 39 Mass. App. Ct. 672, 675 (1996), quoting from *Jones* v. *Commonwealth*, 327 Mass. 491, 493 (1951). Cross-examination must be limited, however, to matters pertinent and proper for impeachment purposes. 39 Mass. App. Ct. at 675. The Commonwealth was entitled to explore the fact that the defendant's failure to attend the voice lineup may have made it more difficult for Foley to identify him. Using the refusal evidence to correct any misimpression created by the defendant's direct testimony was neither impertinent nor improper. The judge did not abuse her discretion in allowing the Commonwealth to use the refusal evidence for impeachment purposes. Contrast *Martel* v. *Massachusetts Bay Transp. Authy.*, 403 Mass. 1, 5-6 (1988) (where testimony had not created erroneous impression of driver's lack of negligence, evidence excluded as subsequent remedial measure was not admissible for impeachment purposes because door had not been opened). There was no error.

Nor was there error in the Commonwealth's use of the consciousness of guilt evidence in its closing argument. While the argument regarding the defendant's delay hindering Foley's ability to identify him was not well developed, the Commonwealth permissibly argued that the jury could infer consciousness of guilt from the defendant's delay. Compare *Commonwealth* v. *Kater*, 388 Mass. 519, 535 (1983), *S.C.*, 394 Mass. 531 (1985), 409 Mass. 433 (1991), 412 Mass. 800 (1992), 421 Mass. 17 (1995) ("prosecutor was entitled to comment on the fact that the defendant had changed his hairstyle between the time of the crime and the time of trial"); *Commonwealth* v. *Carrion*, 407 Mass. 263, 277 (1990) (jury could infer, from evidence that the defendant's appearance had been altered, that he had done so purposely to conceal evidence). The defendant never specifically requested a jury instruction on consciousness of guilt, and the judge did not err in failing to give one sua sponte. *Commonwealth* v. *Simmons*, 419 Mass. 426, 436 (1995). *Commonwealth* v. *Walker*, 421 Mass. 90, 97 (1995).

5. *The Commonwealth's missing witness argument.* The defendant argues that the Commonwealth's closing argument, alluding to missing alibi witnesses, impermissibly shifted the burden of proof. The defendant took the stand in his own defense. During his direct testimony, he testified that he recalled his activities on Easter Sunday, four days before the robbery, but had no exact memory of the days immediately preceding the day of the robbery or of April 7 itself. The Commonwealth, in its closing, responded by arguing that it was "funny" how the defendant remembered what he was doing on April 4, but not on April 7. The prosecutor went on to argue that "if he didn't remember what he was doing the night of the robbery and wasn't responsible for that robbery, he damn sure would find out where he was, who he was with, and bring them in here and have them testify to tell you that they were with him."

Defense counsel did not object to the Commonwealth's closing argument, either contemporaneously or at sidebar at the conclusion of the argument; nor did he request a curative instruction. Accordingly, the standard of review is whether the prosecutor's missing witness argument created a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Marquetty*, 416 Mass. 445, 450 (1993).

The reference to missing alibi witnesses was improper and should not have been made. The defendant never mentioned being with someone or having any recollection — vague or specific — of who he was with on April 7, either in his direct testimony or on cross-examination. He testified that he did not remember where he was the night of the robbery. Absent some foundation in the defendant's testimony, the prosecutor's closing was neither a fair nor reasonable comment on the defendant's testimony. *Commonwealth* v. *Cancel*, 394 Mass. 567, 575-576 (1985). See *Commonwealth* v. *Groce*, 25 Mass. App. Ct. 327, 328, 330-331 (1988) (where defendant's testimony at trial "did not place him in the physical presence of either potential witness at the crucial time," judge erred in allowing prosecutor to comment on missing alibi witnesses during closing, and in giving missing witness instruction); *Commonwealth* v. *Matthews*, 45 Mass. App. Ct. 444, 449 (1998) (where defendant "could not remember definitively" where he was, "it is unlikely that the [missing] witnesses would have remembered").

Whether the improper comment requires reversal depends on a number of factors. See *Commonwealth* v. *Santiago*, 425 Mass.

491, 500 (1997), *S.C.*, 427 Mass. 298 (1998); *Commonwealth* v. *Wilson*, 427 Mass. 336, 351 (1998). While the prosecutor's comment indirectly went to the heart of the issue (the identification of the defendant) and the evidence of the defendant's guilt was not overwhelming, contrast *Commonwealth* v. *Matthews*, 45 Mass. App. Ct. at 449, the judge's instructions on the presumption of innocence, reasonable doubt, and the respective burdens of proof, while not lengthy, accurately and succinctly stated the law. More persuasive is the absence of an objection from trial counsel to the Commonwealth's closing. See *Commonwealth* v. *Lyons*, 426 Mass. 466, 471 (1998), quoting from *Commonwealth* v. *Mello*, 420 Mass. 375, 380 (1995) ("[a]lthough not dispositive, we consider the fact that the defendant did not object to the statements at trial as 'some indication that the tone [and] manner . . . of the now challenged aspects of the prosecutor's argument were not unfairly prejudicial' "). Nor did he request any curative instructions or object to the instructions as given.

We are not unmindful that "[c]ircumspection in this matter is especially called for where the inference would run against a defendant in a criminal prosecution, for the inference may come uncomfortably close to invading constitutional rights." *Commonwealth* v. *Groce*, 25 Mass. App. Ct. at 330, quoting from *Commonwealth* v. *Schatvet*, 23 Mass. App. Ct. 130, 134-135 (1986). Nonetheless, viewed in the context of the entire closing argument, the judge's instructions to the jury stating that the burden of proof rests on the Commonwealth, and the evidence produced at trial, *Commonwealth* v. *Lyons*, 426 Mass. at 471, we perceive no substantial risk of a miscarriage of justice. "The remark, although better left unsaid, does not require reversal." *Commonwealth* v. *Wallace*, 417 Mass. 126, 133 (1994).

*Judgment affirmed.*