COMMONWEALTH *vs.* JEFFREY L. BROW.

Worcester. June 10, 1985. — July 15, 1985.

Present: GREANEY, C.J., KAPLAN, & FINE, JJ.

*Breaking and Entering. Evidence,* Flight, Consciousness of guilt, Relevancy and materiality. *Practice, Criminal,* Instructions to jury.

At the trial of a complaint charging breaking and entering in the daytime with intent to commit larceny, there was sufficient evidence presented by the Commonwealth to warrant denial of the defendant's motion for a required finding of not guilty. [376-378]

At the trial of a criminal case, the judge's instructions to the jury on consciousness of guilt, which referred to the defendant's making an "attempt to cover up the commission of the crime" and which failed to caution the jury concerning the equivocal nature of flight, created a substantial risk of a miscarriage of justice. [378-380]

At the retrial of a complaint charging breaking and entering in the daytime with intent to commit larceny, evidence that the victim's home had been burglarized a few weeks before the crime in question, which was relevant to counteract certain obvious defenses to the charge, may be admitted in the discretion of the judge, with jury instructions, at the defendant's request, that there is no evidence linking the defendant with the first housebreak. [380-381]

COMPLAINT received and sworn to in the Worcester Division of the District Court Department on November 9, 1982.

On appeal to the jury session of that court, the case was tried before *William Garbose,* J.

*Nona E. Walker,* Committee for Public Counsel Services, for the defendant.

*Claudia R. Sullivan,* Assistant District Attorney, for the Commonwealth.

GREANEY, C.J. We conclude that the Commonwealth's evidence was sufficient to prove the crime charged (breaking and entering in the daytime with intent to commit larceny) but that the defendant must have a new trial because of prejudicial error

in the judge's instruction on the concept of consciousness of guilt. Finally, we comment on a question of evidence likely to arise at retrial.

1. The evidence viewed in the light most favorable to the Commonwealth and with permissible inferences therefrom, see *Commonwealth* v. *Amaral,* 13 Mass. App. Ct. 238, 239 (1982), and cases cited, permitted the jury to find the following. On November 9, 1982, the owner left her house at approximately 11:00 A.M. for an appointment. Hers was the only house on Sutton Place in Worcester, which is a narrow dead-end street that does not usually get much traffic. She turned onto Sutton Lane from Sutton Place, but, as she reached a nearby intersection, she recognized an automobile that she had observed driving down her street a day or two before. The vehicle was large, dark, and old, and it had a dull finish. She identified the defendant's brother, Gary Brow,[1] as the person who had been driving the automobile both on November 9 and on the previous date. On both occasions there was also a passenger in the car. She had not obtained a good look at the passenger, other than to observe, on November 9, that he was white and had long hair.

After seeing the automobile turn onto Sutton Lane, the owner of the house did not continue to her appointment but instead circled around to a spot which gave her an unobstructed view of her house from a distance of a few hundred feet. She later timed this trip, allowing for a stop at a traffic light, as taking her three and one-half minutes. At that location, the owner could see the automobile, which now appeared to be empty, parked in front of her house. She could not see beyond the porch area of the house. She immediately went to a gas station nearby and called the police. During her conversation with the police dispatcher (approximately two and one-half minutes after she had seen the automobile parked in front of her house) she saw the vehicle headed up the street in her direction. She ran out to observe the license plate, but the automobile had no

---

[1] Gary Brow was tried with the defendant and was also convicted of breaking and entering in the daytime with intent to commit larceny. His appeal is not before us.

front plate. The two men in the automobile saw her, held a quick discussion, and then abruptly backed the vehicle up at what was described as a high rate of speed. The owner returned to the telephone and told the police dispatcher that the only other route to a main road was by means of Sutton Lane. The owner then drove to Sutton Lane, where the police had by that time stopped the automobile and ordered both defendants to stand outside the vehicle. She told the police that they appeared to be the men she had seen and then returned to her house with one of the police officers.

The door to the house, which had been locked when the owner left, was open, and its frame had been shattered. A box on her bureau had its drawers taken out, an old and broken CB radio on her son's desk had been moved, and clothes had been pulled out of her daughter's bureau. Nothing, however, had been taken. The police officer who stopped the automobile reported that it took him less than three minutes to reach Sutton Lane after he received the dispatch. A second police officer, who arrived at the scene after the defendant and his brother were out of the automobile, asked them what they were doing in the area. One of the Brows responded that he was looking for an old girl friend but did not know her address. A police officer attempted to take fingerprints at the scene, but only the unlocked porch door had a suitable surface for a fingerprint test, and the one print which was obtained from the glass portion of this door did not match the prints of either defendant.

From the above, the jury could reasonably infer that the defendant was a passenger in the automobile driven by his brother Gary Brow which had parked outside the owner's house, and that the two brothers together broke and entered into the house looking for items of value to steal. (That they did not find anything of value was explained by the facts that the house had been burglarized a week earlier and that the owner, fearful of another break, had hidden the television set, her only remaining valuable possession, before leaving for her appointment.) The jury could also infer that the brothers' lack of success provided some explanation for their exit from the house a few minutes after the vehicle was first observed.

There was, in our opinion, enough evidence, considered under the applicable standard, see *Commonwealth* v. *Latimore,* 378 Mass. 671, 677-678 (1979), to establish, with the required degree of certainty, the essential elements of the crime charged. Accordingly, the defendant's motion for a required finding of not guilty, Mass.R.Crim.P. 25(a), 378 Mass. 896 (1979), was properly denied.

2. In his closing argument the prosecutor spent considerable time on the point that the backing up of the automobile demonstrated the defendant's consciousness of guilt.[2] No jury

[2] The prosecutor's argument on the consciousness of guilt evidence reads as follows: "Your Honor may instruct you [on consciousness of guilt]. I will not, that's not my job. I ask you to look, though, and consider that old adage in grade school all the way up to today. That actions speak louder than words. Actions speak louder than words. That is what we mean. We don't have direct evidence, putting those men in that house. Shucks, isn't that awful, and the police, were they sloppy? No, they did the fingerprints as best they could, and they looked at the house. Why didn't they get prints on that one big door? Because the door wouldn't yield prints. But consider this, why did they throw it in reverse? Why did they speed away? Why did they look at her? Remember the officer said he asked the men where were they going, what were they doing. They were looking for a girl friend. They haven't got the name of that girl friend. That's why they threw it in reverse, that's why they took off.

"You know, all three of us counsel have urged you to use common sense. That's a precious, precious thing, and we've urged it because we believe it will help us. Consider all of the testimony. When you reach this point, when you reach the point of actions speak louder than words, actions of those two men being in the car, those two men passing her as they came down, seeing her go out, she coming around three or four minutes more, they driving down there, getting into the house, who knows how they broke in. Does that really matter? The door's broken in, drawers are opened up. The wood, half-inch, two inches, and a door, does that matter? But as they come out after she's seen the car, they come here, consciousness of guilt. They come here, they stop a few feet away from her, they look at that woman. She looks at them, they have a quick conversation and they throw it in reverse. They throw it in reverse, they drive away. That's innocence?

"Decide the case as I know you will. There's not sketchy evidence here, there's circumstantial evidence, and there's a little more to buttress it, a whole lot more to buttress it. A great deal more. Their actions when she ran up and why did she run up? She ran up to see them, she ran up to see the license plate. No license plate on the front of that car. Why did they go [in] reverse? Maybe there was a license plate on the back of that car. Consciousness of guilt. Decide the case as I know you will. Consider all the facts and when you come back down here, remember, their actions spoke for them that day as much as any other statement. Their actions are running."

instruction on the issue was formally requested by counsel. The judge, however, perhaps in response to the suggestion in the first sentence of the prosecutor's final argument, see note 2, *supra,* covered the subject with an instruction which reads, in its entirety, as follows: "Now, you've heard the consciousness of guilt. If you find that the defendants made any attempt to cover up the commission of the crime or flight from the area where the crime was committed are matters which you may consider on the question of consciousness of guilt." There was no objection to the instruction.

The instruction is bad. By speaking about the defendant's making an "attempt to cover up the commission of the crime," the instruction may have, with subtlety, conveyed to the jury the notions that the judge considered the defendant guilty and that the evidence of attempted flight was confirmation of his guilt. The instruction also failed to caution the jury concerning the equivocal nature of flight by emphasizing the two mandatory comments set forth in *Commonwealth* v. *Toney,* 385 Mass. 575, 585 (1982).[3] See *Commonwealth* v. *Matos,* 394 Mass. 563, 565-566 (1985). See also *Commonwealth* v. *Kane,* 19 Mass. App. Ct. 129, 137-138 (1984). Moreover, the case contains circumstances roughly parallel to the circumstances deemed significant to the grant of a new trial in the *Matos* case, *supra* at 564-566 (except for the lack of a formal request for an instruction and an objection to the instruction given). Having undertaken to give an instruction on consciousness of guilt, the judge had the duty, at least as to the required parts, "to state the applicable law to the jury clearly and correctly." *Commonwealth* v. *Corcione,* 364 Mass. 611, 618 (1974). *Commonwealth* v. *Wood,* 380 Mass. 545, 548 (1980). Despite the fact that the Commonwealth had a good case, we cannot say with conviction that the truncated and incorrect charge on consciousness of guilt, fortified by the prosecutor's vigorous argu-

---

[3] Since there was no request for instructions on the question the judge was not required to give the additional instructions pertaining to the evaluation of consciousness of guilt evidence set forth in *Commonwealth* v. *Toney,* 385 Mass. at 585 n.6. These instructions expand upon the two mandatory instructions.

ment on the evidence, could not have affected the result. We conclude, therefore, that a substantial risk of a miscarriage of justice exists and that a new trial is necessary to remedy that risk.[4]

3. Through the owner's direct testimony, the prosecutor put in evidence, over objection, that the house had been burglarized a few weeks prior to November 9; that everything of value had been stolen; and that the owner had replaced only the television set. That evidence tended to explain the absence of valuables in the house, the victim's reason for hiding the television set, and the short time span of the housebreak. The evidence had relevance to counteract obvious defenses (some of which were raised at the trial): (1) that there was no housebreak at all; (2) that if there was a housebreak, the defendant and his brother, who had nothing in their automobile when it was stopped, were not the housebreakers; and (3) that even if a breaking and entering was committed by the defendant and his brother, their intent was not to commit a larceny or other felony. However, as there was no concrete evidence linking the defendant to the earlier housebreak, the evidence could not be admitted as a prior bad act (assuming the trial judge would have exercised his discretion to admit it on that theory).

At retrial, the judge will have considerable discretion in the handling of this evidence. The judge may exclude it altogether. On the other hand, the judge may let it in (as it came in at this trial) in the Commonwealth's case in chief, or the judge may postpone its admission until the defense raises a contention which calls for the introduction of the evidence as a matter of fairness. If the evidence is admitted, the defendant will be

---

[4] We realize that in the *Matos* case, *supra,* the defendant filed requests for jury instructions on the consciousness of guilt evidence and objected to the judge's failure to state the portion of the charge required by the *Toney* case. We do not think the result should necessarily turn on whether the instruction was requested. If the trial judge decides sua sponte to essay on the topic, then the judge must at least comply with the requirements of the *Toney* case. The lack of an objection to the instruction, of course, is of some significance and limits review to the risk of a miscarriage of justice standard. In some cases, it may be trial strategy for defense counsel not to request a consciousness of guilt instruction.

entitled, upon request, to an immediate instruction which advises the jury that he is not charged with any crimes which may have occurred before November 9, that there is no evidence implicating him in any previous housebreak of the victim's residence, and that the jury are to consider only whether he is guilty of the charge before them.

*Judgment reversed.*

*Verdict set aside.*