COMMONWEALTH vs. HERMAN GROCE.

No. 87-651.

Suffolk.  December 16, 1987. — January 26, 1988.

Present: SMITH, KAPLAN, & FINE, JJ.

*Evidence,* Failure to produce evidence, Flight, Consciousness of guilt. *Practice, Criminal,* Argument by prosecutor, Instructions to jury.

At the trial of an indictment for unarmed robbery, the judge erred in permitting the prosecutor to comment to the jury in his closing argument on the defendant's failure to call either his mother or his girlfriend to testify in support of his alibi, and, thereafter, in instructing the jury that they could draw an adverse inference based on the defendant's failure to call either as a witness, where, in the circumstances, the likely ability of either prospective witness to have given important testimony supporting the defendant's alibi was minimal. [329-331]

At the trial of an indictment for unarmed robbery, it was error for the judge, on the basis of evidence that the robber had fled from the scene of the crime, to instruct the jury that they could consider evidence of flight as consciousness of guilt, where the evidence of flight gave rise to no reasonable inference that the defendant was the assailant and where the instruction may have conveyed the notion that the judge believed it was the defendant who fled. [331-332]

INDICTMENT found and returned in the Superior Court Department on October 16, 1985.

The case was tried before *James D. McDaniel, Jr.,* J.

*Patricia A. O'Neill,* Committee for Public Counsel Services, for the defendant.

*Joseph T. Kittredge,* Assistant District Attorney (*Sioban Power,* Legal Assistant to the District Attorney, with him) for the Commonwealth.

FINE, J. The defendant was convicted of unarmed robbery after a jury trial in the Superior Court. He contends that the judge erred (1) in permitting the prosecutor to comment to the jury in his closing argument on the defendant's failure to call

two witnesses and then instructing the jury that they could consider that failure adversely to the defendant and (2) in instructing the jury that they could consider evidence of flight as consciousness of guilt. In each instance, the defendant preserved his appellate rights by making timely objections, not to the form of the instructions given, but because the evidence did not justify the instructions. Both of the instructions to which the defendant objected were of the type which, because of their potential for prejudice, are to be given with caution and circumspection. We agree with the defendant that neither instruction was called for in the circumstances and that the errors, at least when considered in combination and, in one instance, as fortified by the prosecutor's argument, were not harmless.

The Commonwealth offered the testimony of Ernestine Skeete, who was the victim of a handbag snatch while she was waiting on the street for a bus to take her to work at around 5:30 A.M. on May 14, 1985. She held tenaciously to her handbag so there was a struggle during which she sustained injuries. The assailant succeeded in getting hold of the purse and ran off. He had been within Skeete's observation for a period lasting between fifteen and twenty minutes. Instead of proceeding directly to work, she headed for the police station. After receiving medical attention, she was left to wait in a room in the station with several hundred photographs on the wall. Before anyone asked her to look at any of those photographs, she told the detective that one of them was that of her assailant. It was a picture of the defendant. Again, from an array of approximately 600 photographs in a book, she selected a photograph of the defendant and indicated to a police officer that she was positive he had been her assailant. Skeete also identified the defendant at trial. The rest of the Commonwealth's case consisted of police testimony confirming Skeete's various identifications of the defendant. The defendant sought in his case, through a police witness, to raise doubts about the identification, and he testified in his own behalf. When asked where he had been at 5:30 A.M. on May 14, 1985, he said he didn't know, but that customarily he stayed either at his

mother's house or his girlfriend's house. He would have been asleep at 5:30 A.M., he said, because he started work at 9:00 A.M. and usually did not wake up before 7:30 A.M. He denied being in the vicinity of the scene of the crime at the time it occurred. Neither his girlfriend nor his mother testified.

1. *The missing-witness instruction.* Over the defendant's objection, the prosecutor was allowed to comment in his closing argument on the defendant's failure to call his mother or his girlfriend to back up his claim that he was elsewhere at the time of the crime. The judge, after discussing with counsel the propriety of a missing-witness instruction, concluded, quite properly, that the case against the defendant was a strong one, even though it rested exclusively on the victim eyewitness's subsequent identification. The victim had expressed certainty of her in-court identification of the defendant as the robber. She had observed the person who robbed her for more than fifteen minutes, had given a description to the police, and, within a short time of the incident, had made a spontaneous positive identification of the defendant's photograph from a very large array and, shortly thereafter, another unwavering identification from a different very large array. Although the availability of the defendant's mother and girlfriend to testify had not been established directly by evidence, compare *Commonwealth* v. *Happnie,* 3 Mass. App. Ct. 193, 195-198 (1975), their availability was essentially conceded by the defendant. Based upon the strength of the Commonwealth's case and the probable ability of the defendant to produce either his mother or his girlfriend, or both, the judge instructed the jury that they could draw an adverse inference based upon the defendant's failure to call either of them to testify.

The applicable principles are stated, with references to supporting authority, in a recent opinion of this court.

"Where a party has knowledge of a person who can be located and brought forward, who is friendly to, or at least not hostilely disposed toward, the party, and who can be expected to give testimony of distinct importance to the case, the party would naturally offer that person as a

witness. If then, without explanation, he does not do so, the jury may, if they think reasonable in the circumstances, infer that that person, had he been called, would have given testimony unfavorable to the party. See *Commonwealth* v. *Finnerty,* 148 Mass. 162, 166-167 (1889); *Commonwealth* v. *Franklin,* 366 Mass. 284, 292-294 (1974); McCormick, Evidence § 272 (3d ed. 1984). There is no basis for any such inference when it appears that the testimony would be unimportant — merely corroborative of, or merely cumulative upon, the testimony of one or more witnesses who have been called. See McCormick, § 272 at 805 & n.12; *Dent* v. *United States,* 404 A.2d 165, 169-173 (D.C. 1979); *State* v. *Brown,* 169 Conn. 692, 705 (1975). Cf. *Commonwealth* v. *Buonopane,* 9 Mass. App. Ct. 651, 659 (1980). Because the inference, when it is made, can have a seriously adverse effect on the noncalling party — suggesting, as it does, that the party has wilfully attempted to withhold or conceal significant evidence — it should be invited only in clear cases, and with caution. See *Commonwealth* v. *Finnerty,* 148 Mass. at 167; *Grady* v. *Collins Transp. Co.,* 341 Mass. 502, 506 (1960); *Commonwealth* v. *Franklin,* 366 Mass. at 294. Indeeed, except in such clear cases a judge may well warn against making any inference from the fact that a person is not produced as a witness. See *Commonwealth* v. *Finnerty,* 148 Mass. at 167; *Commonwealth* v. *Cobb,* 397 Mass. 105, 108-109 (1986). Circumspection in this matter is especially called for where the inference would run against a defendant in a criminal prosecution, for the inference may come uncomfortably close to invading constitutional rights."

*Commonwealth* v. *Schatvet,* 23 Mass. App. Ct. 130, 134-135 (1986) (footnotes omitted).

The question the judge was to decide on the particular evidence before him, thus, was whether, if the defendant's testimony was truthful, his mother or girlfriend would have been able to give testimony important and helpful to his case so that he would in the normal course have been expected to call them as witnesses. Exercising the caution required, the judge should have answered that question in the negative. The defendant in

his testimony did not place himself in the physical presence of either potential witness at the crucial time. He testified at trial that he didn't know where he was on that particular morning, which is not surprising, given the life-style to which he testified and the fact that he wasn't arrested until some three months after the date of the crime. If he couldn't remember where he had been, it is unlikely that his mother or girlfriend would have remembered. Moreover, if the household members were asleep at that early hour, as seems likely, they could not have testified to their awareness of the defendant's presence. The likely ability of either witness, therefore, to have given important testimony supporting the defendant's alibi was minimal. Compare *Commonwealth* v. *Bryer,* 398 Mass. 9, 11-13 (1986).

2. *The consciousness of guilt instruction.* The judge, sua sponte, gave an instruction on consciousness of guilt based upon the evidence that the robber fled from the scene of the crime after obtaining possession of Skeete's handbag. In some circumstances, evidence of flight or similar conduct provides an appropriate occasion for an instruction to the jury that they may use the evidence to draw an adverse inference against the defendant. Typically, the issue of the appropriateness of such an instruction arises in the context of evidence of conduct, unquestionably attributable to the defendant on trial, suggestive of a consciousness on his part of having done something wrong for which he might be sought. See, e.g., *Commonwealth* v. *Toney,* 385 Mass. 575, 583 (1982). An inference may be drawn from such conduct either that a crime occurred or, if it is conceded that a crime occurred, that the defendant is the one who committed it.

The conduct in this case, flight from the scene of the crime, was that of the assailant. There is no dispute that the same individual committed the offense and fled from the scene. The flight might be said to be evidence that the person who fled was aware that what had occurred between him and the victim was wrongful. There was no issue at trial, however, whether the incident had actually occurred or whether what had occurred was a crime, only whether the defendant was the one who

committed it. The evidence of the assailant's flight with the fruits of the robbery did not shed any light on the issue of identification; it did not give rise to a reasonable inference that the defendant was the assailant. The instruction, therefore, given the posture of the case, was inapposite. Although the judge in framing the instruction sought to avoid doing so,[1] we conclude on our consideration of the instruction as a whole that he may well have conveyed the notion to the jury that he believed that it was the defendant who fled and, thus, that the victim's identification testimony was accurate. See *Commonwealth* v. *Brow,* 20 Mass. App. Ct. 375, 379 (1985).

*Judgment reversed.*

*Verdict set aside.*

---

[1] In the course of a lengthy charge on consciousness of guilt, with repeated references to "the defendant's conduct," the judge did say the following: "Such actions or conduct as flight from the scene of an offense gives rise to what is know in the law as an implied admission of so-called consciousness of guilt. Therefore, such evidence may be considered by you, the jury, on the issue whether or not the defendant, in his conduct, in his flight from the scene, or the offender, displayed any consciousness of guilt. You're going to consider this in determining if it's the defendant, anyhow, so I'm using the word defendant, not because I determined that he's guilty; that has nothing to do with this. You have to determine if he was there. If you determine he was there and fled from the scene, you may consider the flight on this issue of consciousness of guilt.