## Commonwealth *vs.* William Horsman.

No. 98-P-247.

Essex. April 8, 1999. - July 9, 1999.

Present: Laurence, Smith, & Lenk, JJ.

*Evidence,* Consciousness of guilt, Argument by prosecutor, Flight, Identification. *Identification. Practice, Criminal,* Instructions to jury.

At the trial of indictments alleging armed assault with intent to rob and assault and battery by means of a dangerous weapon in which identification was the main issue, the prosecutor's closing argument, characterizing the assailant's described behavior leaving the scene as evidence of consciousness of guilt, did not misstate the evidence [265-266]; and the judge did not abuse his discretion in instructing on consciousness of guilt, where there was corroborative testimony from the victim and three witnesses identifying the defendant, and where there was additional independent evidence of the defendant's consciousness of guilt arising from his false statements to police [266-269].

Where a criminal case was tried in 1996, before the decision in *Commonwealth v. Santoli,* 424 Mass. 837, 845 (1997), applicable prospectively only, the judge's instruction to the jury that they could consider the strength of the witnesses' identifications did not constitute an error requiring a new trial. [269-270]

Indictments found and returned in the Superior Court Department on February 8, 1995.

The cases were tried before *Howard J. Whitehead,* J.

*Nona E. Walker,* Committee for Public Counsel Services, for the defendant.

*Robert J. Bender,* Assistant District Attorney, for the Commonwealth.

Laurence, J. On the afternoon of October 24, 1994, Norman Jackson, who was visually impaired, was attacked from behind while walking home from the Andover train station by a man who ordered him to surrender his briefcase. Jackson resisted, and a tussle ensued. Jackson managed to hold onto his briefcase, but his assailant hit him repeatedly on the head, causing bleed-

ing that required hospital treatment, and jabbed him in the back with a blunt object. The defendant, William Horsman, was subsequently identified as the attacker.

The defense at trial, upon indictments charging Horsman with armed assault with intent to rob (G. L. c. 265, § 18) and assault and battery by means of a dangerous weapon (G. L. c. 265, § 15A), was misidentification. Following his conviction by a Superior Court jury, the defendant appealed, claiming that (1) the judge improperly permitted the prosecutor to argue the defendant's consciousness of guilt and erred in instructing the jury on consciousness of guilt over the defendant's objection; and (2) the judge improperly instructed that the jury could consider the "strength of the identification," in contravention of the suggestion in *Commonwealth* v. *Jones*, 423 Mass. 99, 110 n.9 (1996), that the quoted language could be omitted. We affirm the convictions.

1. *Consciousness of guilt.* We summarize the evidence bearing on the Commonwealth's theory that the defendant's conduct reflected consciousness of guilt. Two passersby who were driving near the intersection of Brook and Central Streets in Andover observed two men struggling, one hitting the other. One of the bystanders, George Rand, had been in his vehicle stopped in traffic on Brook Street, near his law office, when he noticed the two people struggling. He heard a woman (the second passerby, Patricia Higgins) yell "Stop it," and lean on her horn. Rand yelled out his window to the men, "Hey, knock it off." Eliciting no response, Rand got out of his vehicle, went up to the men, and put his hands on their shoulders. The men separated; the apparent assailant (hitter) backed away and then, "very deliberately," started walking down Brook Street, eventually breaking into a run toward the railroad tracks. Rand saw the man veer in between two houses. Shortly thereafter, Rand saw a vehicle pull out onto Brook Street and take a right onto Central Street. (Rand subsequently identified the defendant as the assailant from a photographic array.)

A third witness, Frederick Vietor, was in his vehicle idling in traffic when he heard honking horns from vehicles in front of him. Vietor looked to his left and saw two men at a distance of twenty to thirty feet. One man (victim) was slumped on the ground, and another man was "walking briskly away from him." The man walked "right past" Vietor's vehicle. Vietor watched the man through his rear view window and observed

him cross Brook Street diagonally. Vietor then pulled around the vehicles stopped in front of him and proceeded toward a church parking lot. As he approached Lupine Road, a car pulled directly in front of him from Ridge Street while making a right-hand turn. The vehicle came within six to eight feet of Vietor, who had a clear view of the vehicle's operator from the shoulders up. Vietor recognized the driver as the same man he had observed walking away from the victim. Vietor followed the vehicle to the railroad tracks and pulled in behind it. A train was crossing, and six or seven other vehicles had stopped in front of them. Vietor wrote down the license plate number and make of the car he was following (which turned out to be the defendant's). The driver suddenly backed up, "ma[d]e a U-turn," and proceeded in the opposite direction. Vietor returned to the scene of the incident, where he turned over the plate number to a police officer. (Vietor, too, later selected the defendant's photograph from an array as the man he had followed from the scene.)

There was additional evidence that fell within the rubric of consciousness of guilt. When the defendant was arrested at a Wilmington gas station on November 9, 1994, and brought to the Andover police station, he was provided Miranda warnings and given an incident report to review. When the police suggested that he cooperate, the defendant responded that he had nothing to hide. He denied any involvement in the incident and claimed to have been working at the Wilmington gas station on the day in question. At trial, however, Patricia Westwater, the manager of the gas station, testified that the defendant first applied for the job on October 26, 1994, two days after the crime, and that he had only started work there on October 27.

The matter of consciousness of guilt first arose at a charge conference, when the prosecutor indicated that he would request such an instruction, and the judge responded that he would give it. The judge noted that the defendant had requested that no instruction on consciousness of guilt be given but had offered certain language in the event the judge opted to deliver one. The judge stated that he would not give the defendant's proposed instruction but would give the *Toney* charge.[1]

During the conference discussion, the judge mused that the central issue in the case was identification and that none of the

---

[1]See *Commonwealth v. Toney*, 385 Mass. 575, 584-585 (1982).

evidence from the passersby pointing to consciousness of guilt "helps you say that it's this defendant as opposed to some other defendant who committed the crime." Defense counsel enthusiastically agreed with this assessment and objected "prospectively" to the Commonwealth's making any closing argument on consciousness of guilt. The judge continued to indicate that he planned to give the *Toney* instruction, referring specifically to the defendant's false statements as to his whereabouts to the police, but nonetheless stated that he would "listen to the argument."

a. *Prosecutor's closing argument.* During his summation, the prosecutor asked the jury to draw inculpatory inferences from Rand's and Vietor's testimony regarding the behavior of the assailant.[2] Defense counsel moved for a mistrial based on that argument, in particular those aspects that focused on consciousness of guilt. The judge denied the motion, observing that "all of those points were appropriate based on the evidence."

The prosecutor did not, in our view, misstate the evidence.[3] "Counsel may . . . attempt to assist the jury in their task of analyzing, evaluating, and applying evidence. Such assistance includes suggestions by counsel as to what conclusions the jury should draw from the evidence." *Commonwealth* v. *Ferreira,*

---

[2]The prosecutor put the following to the jury, all of which the defendant unsuccessfully objected to:

"What about, ladies and gentlemen, the defendant's own behavior, his own activities? Well, again, Mr. Rand tells you that he sees the defendant . . . the person whom he subsequently identified as the defendant, struggling and attacking and beating [the victim]. He approaches them. He separates them. And he's calm, at least, in terms of the manner he seems to walk in first. Then he breaks into a run. . . . So what does that tell you about this defendant's thought process? He knew what he did. . . . He knew what he did and what he's thinking is, 'Get me out of here as quickly as I can.' And doesn't that jibe? Isn't that consistent with Mr. Vietor's testimony? . . .

"What about the defendant's actions down by the railroad tracks? And, again, can there be any doubt that it was him? You have the slip of paper taken down at the time by Mr. Vietor, his car. You have Mr. Vietor saying it's him driving. And, when he stopped at the tracks and he can't go, what does he do? . . . He backs the car up so that, as Mr. Vietor said, 'I had to back up a little bit'; and he takes off down Lupine Road."

[3]We reserve that part of the analysis relating to the defendant's claim that it was improper for the prosecutor to refer to the defendant's consciousness of guilt in a case based upon misidentification to the following section on the jury instructions.

381 Mass. 306, 316 (1980). Flight from the scene of a crime may be considered evidence of consciousness of guilt. See *Commonwealth* v. *Geagan,* 339 Mass. 487, 512, cert. denied, 361 U.S. 895 (1959); *Commonwealth* v. *Toney,* 385 Mass. 575, 584-585 (1982). Here, George Rand testified that, at his approach and on his remonstrance, the victim's assailant first moved away at a deliberate pace, then broke into a run. As noted above, Rand also identified the defendant's photograph from two separate arrays as the man he witnessed assaulting the victim and then running away.[4] Rand's testimony was partially corroborated by Frederick Vietor, who, while not witnessing the actual assault, saw a man walking briskly away from another man lying on the ground. Vietor observed the man head in the general direction of a church parking lot. He subsequently observed the same briskly walking man operating a vehicle that pulled in front of him from a side street in the general area of the church parking lot. Vietor obtained the license plate number of the vehicle, which was subsequently discovered to be registered to the defendant. Vietor then descried the man become impatient waiting in the line of cars for a train to pass, make a U-turn, and head in the opposite direction.

A rational and permissible inference from the observed actions was that the assailant was in a hurry to leave the scene because of his awareness that two passersby had witnessed the assault, that another had observed its immediate aftermath, and that, accordingly, he might be identified by them or apprehended by the police if he lingered in the area.[5]

b. *Jury instructions on consciousness of guilt.* The defendant asserts that the jury instructions on consciousness of guilt "magnif[ied] the prejudicial effect of the prosecutor's closing" and, further, that portions of those instructions "put the judge's imprimatur on the prosecutor's distortion of the case and definitively submerged the only real issue, identification, into

---

[4]The victim selected the defendant's photograph from two separate arrays and testified that he was "quite positive" about the later of the two identifications. The victim had difficulty, however, making an in-court identification of the defendant as his assailant.

[5]Even if we were to deem the prosecutor's challenged argument error, we would uphold the propriety of the judge's denial of the defendant's motion for a mistrial as within the judge's broad discretion, given the relevance of the evidence commented on by the prosecutor to the significant issue of the opportunity of the witnesses to have made a reliable identification of the defendant.

the assumption that the identification was correct."[6] Relying principally on *Commonwealth* v. *Groce*, 25 Mass. App. Ct. 327, 331-332 (1988), he argues that a consciousness of guilt instruction was improper in the present case, because the principal issue was whether the defendant or someone else committed the crime.

In *Groce*, a consciousness of guilt instruction was given based on evidence that the robber fled the scene of the crime after snatching the victim's handbag. There was no dispute that the same individual committed the offense and fled the scene. The issue at trial was whether Groce was the one who had committed the crime. We disapproved of the consciousness of guilt instruction in the circumstances of that case, noting that the evidence of the assailant's flight did not shed any light on the issue of identification. Accordingly, the instruction may have conveyed to the jury the notion that the judge believed that it was Groce who fled.

While the defendant's reliance on the *Groce* case has surface appeal, there are significant differences that dilute its applicability here. Unlike *Groce*, here there was additional, independent consciousness of guilt evidence — the defendant's false statement to the police. See *Commonwealth* v. *Watson,* 377 Mass.

---

[6]The challenged instruction was as follows: "Now, in this case, you also heard evidence concerning certain statements that the defendant might have made at the Andover Police Department; and you heard other evidence which the Commonwealth argues is indicative of consciousness of guilt. If the Commonwealth has proven that the defendant made a false statement as to his whereabouts on the date in question or engaged in other conduct which indicated a consciousness of guilt, you are permitted to consider whether such actions indicate feelings of guilt by the defendant and whether, in turn, such feelings of guilt might tend to show actual guilt on this indictment.

"You are not required to draw such inferences, and you should not do so unless they appear to be reasonable in light of all the circumstances in the case. If you decide that such inferences are reasonable, it will be up to you to decide how much importance to give them. But you should always remember that there may be numerous reasons why an innocent person might make inaccurate statements or otherwise engage in conduct which might appear to be indicative of guilt. Such conduct does not necessarily reflect feelings of guilt.

"Please also bear in mind that a person having feelings of guilt is not necessarily guilt [*sic*] in fact, for such feelings are sometimes found in innocent people. Finally, remember that, standing alone, such evidence is never enough to convict a person of a crime. You may not find the defendant guilty on such evidence, alone; but you may consider it in your deliberations along with all the other evidence and give it such weight as in your judgment it is fairly entitled to receive."

814, 831 (1979). Moreover, the judge's instruction on consciousness of guilt here was well-balanced and closely hewed to the suggested language in the *Toney* case. Importantly, the charge clearly left to the jury the question whether it was, in fact, the defendant who engaged in the inculpatory conduct ("If the Commonwealth has proven that the defendant . . . engaged in other conduct which indicated consciousness of guilt . . . ."). Cf. *Commonwealth* v. *Brown*, 414 Mass. 123, 126-127 (1993) (in identification case, judge could have properly charged jury on consciousness of guilt demonstrated by unusual behavior of person leaving the crime scene, with proviso that such behavior could be considered only if jury found that evidence of it existed in the case). Contrast *Groce, supra* at 332 n.1 ("repeated references" to the defendant's conduct).

Additionally, the reversal in *Groce* was not based on the consciousness of guilt instruction alone. Rather, it was the product of the serious potential prejudice created by the synergetic conjunction of that instruction with the judge's permitting the prosecutor to comment in closing on the defendant's failure to call two witnesses and then instructing the jury that they could consider that failure adversely to the defendant. See *Groce, supra* at 329-331 (noting in particular the trial judge's failure to exercise the caution called for by *Commonwealth* v. *Schatvet*, 23 Mass. App. Ct. 130, 134-135 [1986]).

Finally, we note (although it is not critical to our distinguishing of *Groce*) that in *Groce*, the victim was the government's sole witness (other than police witnesses who testified that the victim identified her assailant from photographs). In the present case, there was a convincing web of proof from the victim and three independent passersby, whose interwoven and mutually corroborative observations pointing strongly to the defendant as the assailant[7] rendered appropriate an instruction on consciousness of guilt.

---

[7]The victim provided Officer Robert Cronin with a description of his assailant as five feet, eight inches or five feet, nine inches, husky, in his forties, with a beard, and wearing sunglasses and a baseball cap. He remembered the man as wearing a blue jacket. George Rand described the victim's assailant as being of medium height and build, with an unshaven face but not a full beard. To the best of Rand's memory, the defendant was not wearing sunglasses or a baseball cap. Officer Cronin put in his report that Rand described the assailant as five feet, eight inches or five feet, nine inches, heavier, in his forties. Patricia Higgins described the man as having a "medium build," and wearing a "jean jacket and pair of jeans pants," which were "almost all blue." Higgins

The instruction as a whole did not "plac[e] the judicial thumb on the scales against the defendant." *Commonwealth* v. *Knap,* 412 Mass. 712, 716 (1992). We discern no abuse of discretion in its deliverance. See *Commonwealth* v. *Cruz,* 416 Mass. 27, 33 (1993), overruled on other grounds by *Commonwealth* v. *Simmons,* 419 Mass. 426 (1995).

2. *Identification instruction.* The defendant's requested identification instruction included the statement that "experts have concluded that an eyewitness's representation of confidence is among the least significant factors in predicting the accuracy of an identification." The proposed language was grounded in the court's comments in *Commonwealth* v. *Jones,* 423 Mass. 99 (1996).[8] The judge indicated at the charge conference that he would give the instruction set forth in *Commonwealth* v. *Cuffie,* 414 Mass. 632, 640-641 (1993), and not the language requested by the defendant. Defense counsel objected.

The judge then instructed the jury, as advertised, that they could consider the strength of the identification. He also cautioned them, in accordance with *Commonwealth* v. *Pressley,* 390 Mass. 617, 618-620 (1983), that a witness may be honestly mistaken in making an identification. At the conclusion of the instructions, defense counsel objected to the absence of the language suggested by the *Jones* case, but when the judge inquired what counsel wanted him to do, counsel responded that a corrective instruction might do more harm than good.[9]

The defendant's trial took place in October, 1996. In *Commonwealth* v. *Santoli,* 424 Mass. 837, 845 (1997), the court held that, "in cases tried hereafter," the language on strength of the identification should be omitted from the standard instruction

---

noted the man had "facial hair that was salt and pepper." Fred Vietor described the man as "stocky-built," with a "scruffy looking face, wearing a jean-type outfit." The jury could have concluded that the various descriptions were largely consistent with one another, exclusive of the sunglasses and baseball cap, and were all the more persuasive because they did not have the appearance of being scripted or in lock-step.

[8]In *Jones,* the court stated: "We would not object to the omission of [language that the jury could take into account the strength of the identification] because it may suggest that the confidence with which a person makes an identification is a valid indicator of the accuracy of the recollection. There is doubt as to the soundness of that assumption." 423 Mass. at 110 n.9.

[9]Contrary to the Commonwealth's argument on appeal, the defendant adequately preserved this issue for appellate review. The judge was well aware of the defendant's position on the matter. See *Commonwealth* v. *Barnes,* 40 Mass. App. Ct. 666, 673 n.3 (1996).

concerning eyewitness testimony. The court expressly declined to apply the rule retroactively. See *Commonwealth* v. *Payne,* 426 Mass. 692, 698 (1998). At the time of the defendant's trial in 1996, it was not error to give the challenged instruction. In any event, the judge made it amply clear, on several occasions, that if the jury had a reasonable doubt concerning the accuracy of the identification of the defendant, they must acquit. We discern no error.

*Judgments affirmed.*