NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

13-P-1730                                      Appeals Court

COMMONWEALTH vs. DANIEL LEE LOPEZ.


No. 13-P-1730.

Essex.      November 10, 2014. - July 29, 2015.

Present:  Rubin, Brown, & Maldonado, JJ.


Homicide.  Felony-Murder Rule.  Robbery.  Practice, Criminal,
    Required finding, Instructions to jury, Lesser included
    offense.  Evidence, Consciousness of guilt, Identification,
    Testimony before grand jury.  Grand Jury.  Witness.



    Indictments found and returned in the Superior Court
Department on October 2, 2009, and February 28, 2011.

    After review by this court, 80 Mass. App. Ct. 390 (2011),
the cases were tried before David Lowy, J.


    Amy M. Belger for the defendant.
    David F. O'Sullivan, Assistant District Attorney, for the
Commonwealth.


    RUBIN, J.  The defendant was indicted on charges of first

degree murder and unarmed robbery.  After the trial court

allowed a motion to dismiss so much of the murder indictment as

was grounded on a theory of felony-murder, the Commonwealth

appealed.  We reversed that order, see Commonwealth v. Lopez, 80 Mass. App. Ct. 390 (2011) (Lopez I), and reinstated the indictment.  An additional indictment was then brought against the defendant, charging manslaughter.  On remand, after a jury trial, the defendant was acquitted of felony-murder, and was convicted of involuntary manslaughter on a theory of wanton and reckless conduct, and of unarmed robbery.  On the involuntary manslaughter charge, he was sentenced to fifteen to eighteen years in State prison, and on the unarmed robbery charge he was sentenced to a subsequent five years of probation.  He now appeals.  We address each issue presented in turn.

1.  Sufficiency of the evidence.  The defendant argues first that the evidence was insufficient on the charge of involuntary manslaughter.  The defendant's argument is that the conduct that formed the basis of his involuntary manslaughter conviction (a single punch to the victim's head) did not "involve[] a high degree of likelihood that substantial harm [would] result to another."  Commonwealth v. Welansky, 316 Mass. 383, 399 (1944) (internal citations omitted).  This argument is difficult to maintain in light of our prior decision in Lopez I. We need not rehearse in detail the facts that the jury might have found viewing the evidence in the light most favorable to the Commonwealth, as they turned out to be essentially the same as those outlined in Lopez I, where the court examined the

evidence before the grand jury. This case involves a "sucker" punch by the defendant to the head of an utterly unprepared delivery person who was walking up steps carrying Chinese food ordered by the defendant for delivery to an address that was not his own. This punch from above sent the victim, Thu Nguyen, falling backwards until his head struck the sidewalk with audible impact. The victim began to gasp for air and to foam at the mouth. The defendant got down on his knees next to the victim, not to aid him, but to search his pockets, stealing $125, as well as the Chinese food. Fifteen hours later, his skull fractured by impact with the sidewalk, Nguyen died.

In Lopez I, we concluded that the evidence was sufficient to provide the grand jury with probable cause to believe that felony-murder had been committed in that the defendant's act was "committed with conscious disregard of the risk to human life," that is, that because of the manner or method of the commission of the underlying felony, here, unarmed robbery, the crime created a "foreseeable risk of death." Lopez I at 394.

As we explained, "Conscious disregard demands conduct more dangerous than that required for involuntary manslaughter. . . . Involuntary manslaughter requires wanton or reckless conduct, that is, conduct involving 'a high degree of likelihood that substantial harm will result to another.' . . . Conduct evincing conscious disregard . . . requires more than a mere threat of

substantial physical harm; conduct supporting felony-murder liability must pose a foreseeable risk of actual loss of life." Id. at 394 n.5 (internal citations omitted).

Having reached the conclusion in Lopez I that evidence essentially identical to that put before the petit jury in this case was sufficient to demonstrate probable cause that felony-murder had been committed under a conscious disregard of risk to human life theory, a fortiori such evidence was sufficient to support at least a finding of probable cause that the defendant committed involuntary manslaughter on a wanton and reckless theory.

To be sure, "probable cause is 'considerably less exacting than a requirement of sufficient evidence to warrant a guilty finding.'" Lopez I at 393, quoting from Commonwealth v. O'Dell, 392 Mass. 445, 451 (1984). Our decision in Lopez I therefore does not actually control this case. But the evidence of the defendant's conduct produced at trial here was sufficient to support the jury's finding beyond a reasonable doubt that he committed the crime of involuntary manslaughter by delivering the deadly blow to the victim. We therefore independently conclude, for the reasons set forth in Lopez I, that the evidence presented to the jury here was sufficient to demonstrate the high degree of likelihood that substantial harm

would result essential to support the defendant's conviction of involuntary manslaughter.

2. Submission of the felony-murder charge. The defendant next argues that he should not have faced trial for felony-murder, and that the submission of that count to the jury prejudiced him by inviting the jury to compromise on a verdict of involuntary manslaughter.

The defendant puts forward two theories for why the felony-murder charge should not have been submitted to the jury. The first is that the evidence was insufficient to show that he acted with a conscious disregard of the risk to human life. This argument is uphill in light of Lopez I, something the defendant acknowledges.

The second argument is that the merger doctrine barred submission of the felony-murder charge to the jury. In Commonwealth v. Bell, 460 Mass. 294, 300 (2011), the Supreme Judicial Court stated that "[i]n felony-murder the conduct which constitutes the felony must be separate from the acts of personal violence which constitute a necessary part of the homicide itself" (citations omitted). In Bell, the defendant had been convicted of felony-murder with a predicate felony of armed home invasion. The fourth element of that predicate felony was the use of force or the threat of the imminent use of force. See ibid. Although the court found that the only force

the defendant actually used was the force that led to the victim's death, see id. at 300-301, the felony-murder conviction was ultimately reversed on other grounds. The court also found that there was an additional threat of imminent force proven. See id. at 302. But the court held that because of the merger doctrine, on any retrial of the felony-murder charge with armed home invasion as the predicate felony, "the jury must be instructed," as they were not in the first trial, "that they may not find the defendant guilty of felony-murder unless, with respect to armed home invasion, they find that the Commonwealth has proved the fourth element of the crime, i.e., conduct of the defendant that was separate and distinct from the acts that caused the victim's death." Id. at 303.[1]

In light of Bell, there is some strength to the defendant's argument about merger, as in this case the element of stealing or taking "by force and violence, or by assault and putting in fear," G. L. c. 265 § 19(b), essential to the conviction of unarmed robbery, was proved by the same conduct that caused the death of the victim.

---

[1] There had been no objection to the instruction at the first trial, and, in light of the conclusion that a retrial was required on other grounds, the court did not determine whether the omission of this language from the instruction created a substantial likelihood of a miscarriage of justice. 460 Mass. at 302.

On the other side of the balance, the Commonwealth cites Commonwealth v. Christian, 430 Mass. 552, 556 (2000).  In Christian, the defendant was convicted of armed robbery, which, like unarmed robbery in the instant case, requires a taking "by force and violence, or by assault and putting in fear."  Ibid., citing G. L. c. 265, §§ 17, 19.  Yet the court there stated that "[w]e can envision no situation in which an armed robbery would not support a conviction of felony-murder" under the merger doctrine.  Ibid.

The defendant argues in essence that Bell overruled Christian.  It is an interesting question whether and how the two decisions can coexist; one that the Supreme Judicial Court doubtless will one day have to address.  But we need not here decide whether the trial judge should have declined to charge the jury on felony-murder, because the defendant's argument founders on his need to show prejudice.

The defendant argues that a conviction of involuntary manslaughter in a case in which felony-murder was improperly submitted to the jury may reflect an improper compromise verdict that would not have entered but for the jury's having had before it the improper felony-murder charge.  There is some strength to this argument in both logic and law.  Although Massachusetts appellate courts have not squarely decided the issue, several

States have reversed involuntary manslaughter convictions in such circumstances.

The defendant would rely on cases from these States, but, as he conceded at argument, there is no State in which, in these circumstances, the prejudice of a compromise verdict is presumed. In New Jersey, for example, if a jury has deliberated upon the guilt of an accused for a greater offense than is warranted by the evidence, the defendant must demonstrate that the verdict on the lesser included offense constituted an "unjust result" if he is to prevail on appeal. State v. Wilder, 193 N.J. 398, 418 (2008).

Even assuming arguendo that the felony-murder charge here should not have been submitted to the jury, and even were we to follow those States that sometimes invalidate lesser included offense convictions in some such circumstances, we cannot conclude that the conviction of involuntary manslaughter in this case was unjust. Because the defendant is unable to carry his burden to meet such a standard, we conclude that his second argument is without merit.

3. Jury instructions. a. Consciousness of guilt. The defendant next challenges the trial judge's sua sponte consciousness of guilt instruction, which the judge gave unexpectedly, and as to which the defendant preserved his claim

of error by objecting at the first possible moment after the instructions were finished.

The defendant relies on Commonwealth v. Groce, 25 Mass. App. Ct. 327 (1988), to argue that the instruction conveyed to the jury that the judge believed it was the defendant who fled. Groce, however, involved a case in which there was no dispute that the individual fleeing from the scene was the perpetrator of the crime. The only issue at trial was identification. Id. at 331-332. In those circumstances, the court concluded, the consciousness of guilt instruction might "have conveyed the notion to the jury that [the judge] believed that it was the defendant who fled and, thus, that the victim's identification testimony was accurate." Id. at 332. The consciousness of guilt instruction there added nothing to the mix with respect to guilt, since, if the defendant was the one who fled, he was also guilty.

In this case, identification was also at issue. However, there was no evidence from any witness to the fatal punch. This case, therefore, is controlled by Commonwealth v. Vick, 454 Mass. 418 (2009): "Unlike Groce, the jury here could have found that the defendant fled from the immediate scene of the [crime] . . . without already having determined that the defendant was the [perpetrator]." Id. at 427. Thus, even assuming the instruction given in this case provided no greater emphasis than

the instruction in <u>Groce</u> that it was for the jury to determine whether the defendant fled the scene, and that consciousness of guilt was relevant only if they did so, "[t]he defendant's flight from the immediate scene of the [crime] . . . could be considered by the jury as consciousness of guilt" evidence. <u>Ibid</u>.

b. <u>Involuntary manslaughter</u>. The defendant challenges two portions of the jury instructions on involuntary manslaughter that he claims are in error. At one point the judge instructed the jury:

> "So if the Commonwealth proves to you each of those three elements beyond a reasonable doubt, your verdict on involuntary manslaughter under a theory of wanton and reckless conduct would be guilty. If the Commonwealth fails to prove one or more of those elements to you beyond a reasonable doubt, under that theory of involuntary manslaughter, your verdict would be not guilty."

The defendant argues that the use of the word "would" in the two places it appears in this quotation were error.

As to the second use of "would," the defendant argues that the jury should have been commanded that they "must not return a verdict of guilty," and that "would" suggests some wiggle room. To be sure, the jury instruction should be clear at every point that in the absence of a finding that each element of an offense is proved beyond a reasonable doubt, it is mandatory that the jury verdict be one of not guilty. Because this claimed error was not objected to, we review the claim to determine whether

any error created a substantial risk of a miscarriage of justice. See Commonwealth v. Alphas, 430 Mass. 8, 13 (1999). Reading the jury instructions as a whole, in which the judge said four times that if there was a reasonable doubt, the defendant "must be acquitted," we cannot conclude that the judge's use of the word "would" in one portion of the instruction created a substantial risk of a miscarriage of justice.

As to the first use of the word "would," the defendant argues that the judge should have instructed that the jury verdict "should [be] guilty." We see no error. Moreover, given the defendant's argument that "would" is insufficiently directive, the judge's instruction here was more beneficial to the defendant than what he suggests was proper.

4. Wainer Caba's grand jury testimony. The judge determined that Wainer Caba, a witness before the grand jury and at trial, was, at trial, feigning lack of memory. Consequently, consistent with Mass. G. Evid. § 801(d)(1)(A) (2014), Caba's grand jury testimony[2] was admitted substantively as inconsistent with his claim of lack of memory. See Commonwealth v. Sineiro, 432 Mass. 735, 745 & n.12 (2000).

---

[2] In pertinent part, Caba testified at the grand jury that he saw the defendant carrying a small brown delivery bag with something in it.

The defendant now argues that the grand jury testimony was coerced.[3] The defendant did not object at trial to the admission of the grand jury testimony on the ground that the witness was coerced. He raised coercion only in relation to the witness's right to counsel, see infra. Consequently, in order to prevail on this claim, he must demonstrate both that the grand jury testimony was indeed coerced, and that admission of the testimony created a substantial risk of a miscarriage of justice. See Commonwealth v. Alphas, 430 Mass. at 13. And, because the issue was not raised before the judge, he made no finding with respect to coercion. Thus, in order to reverse on this ground, the defendant must show that a finding that the witness was not coerced would have been clear error.

The record here is inadequate to support such a conclusion. In particular, we are in no position to judge the credibility of the witness's testimony to the extent it may have indicated coercion. The defendant's claim must therefore fail, at least in the posture in which it was presented in this direct appeal.

As part of his argument concerning the grand jury testimony, the defendant notes that Caba was not provided counsel at the grand jury stage of these proceedings. The

---

[3] Specifically, the defendant argues that statements Caba made during police interviews were coerced, and that Caba felt his grand jury testimony needed to be consistent with the statements he had made to the police.

argument that Caba's lack of counsel introduced error is premised on a conclusion that the grand jury testimony was coerced. The defendant argues that the presence of counsel might have assisted Caba at the point at which he was allegedly coerced. Because we cannot conclude that a factual finding of coercion was compelled by the evidence, this argument also is unavailing.

The defendant also argues that had Caba been provided counsel at trial, "he may have benefitted from the advice counsel could offer him regarding how to explain and convey his predicament to the jury." However, even if in light of the inconsistent testimony at the grand jury and at trial, the witness's Fifth Amendment rights were at issue such that the judge ought to have appointed counsel for him at trial, see, e.g., Commonwealth v. Hesketh, 386 Mass. 153, 155 (1982), something we do not decide, the defendant lacks standing to assert the witness's right in this regard. See Commonwealth v. Peloquin, 30 Mass. App. Ct. 960, 961 n.1 (1991) ("The defendant argues that had the witness been advised of his right to counsel, he might have elected not to testify. Aside from the purely speculative nature of the claim, the defendant has no standing to assert the claim, because [the witness's] right to counsel is his alone to assert").

Judgments affirmed.