THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
LUTHER EDWARDS, Defendant-Appellant.
First District (6th Division)   No. 1—90—3306

Opinion filed February 5, 1993.

Rita A. Fry, Public Defender, of Chicago (Mark Floyd Pasterski, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Donald T. Lyman, and Bennett E. Kaplan, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GIANNIS delivered the opinion of the court:

Defendant was charged in connection with the abduction of three women on three separate occasions during the period of March 25, 1989, to March 31, 1989. The charges relating to each abduction were tried separately. Defendant initially filed a motion to appeal both the second and third convictions, those concerning the abductions of Patty K. and Karen D., respectively. Defendant no longer challenges his conviction in the Patty K. case. This appeal therefore relates only to the defendant's third conviction, that for the March 25, 1989, abduction of Karen D.

Defendant was charged with aggravated criminal sexual assault, aggravated kidnapping and robbery. (Ill. Rev. Stat. 1989, ch. 38, pars.

12—14, 10—2, 18—1.) On the day set for trial, defendant indicated to the trial court that he and his appointed counsel were locked in disagreement. Defendant requested the court to appoint substitute counsel or, in the alternative, allow him time to retain his own counsel. After discussion with both defendant and his counsel, the trial court denied defendant's request. After further discussion, and after explaining to defendant the hazards of self-representation, defendant elected to proceed to trial *pro se*. Defendant is represented by the public defender's office in this appeal. No issues concerning defendant's decision to represent himself are raised.

On October 16, 1990, following a jury trial, defendant was found guilty of each of the charged offenses. Defendant was sentenced to concurrent terms of imprisonment of 60 years on the conviction of aggravated criminal sexual assault, 15 years on the aggravated kidnapping conviction and 7 years on the conviction of robbery. On appeal, defendant contends that the court erred by admitting evidence of his refusal to comply with a court order compelling him to submit to the taking of blood samples.

The complaining witness testified to the following facts. On March 25, 1989, she left work at 9:30 p.m. and drove to a bar to meet her boyfriend. At 2 a.m., she and her boyfriend went to a second bar across the street. At 4 a.m. she left the bar alone and drove to her sister's house to spend the night. She arrived at her sister's home at 4:30 a.m. and parked the car in an alley next to the building.

When the complaining witness got out of the car, she heard footsteps and saw a man walking next to the trunk of her car. She identified the man in open court as being the defendant. She testified that the defendant grabbed her arm and stuck a blunt object covered by a newspaper into her side stating, "I have a gun. Now get in the car. I don't want to have to shoot you." She testified that the defendant dragged her into the car and required her to drive for two hours through the streets of the north side of Chicago.

The complaining witness testified that defendant had her park the car in an alley and climb into the back seat where he forced her to have sexual intercourse. It was during this time that she noticed a silver-dollar-sized tattoo on the left arm of her attacker. She identified the defendant's tattoo as being the same as the one she saw during the attack. Afterwards, she testified that defendant had her drive away from the area and ultimately park at a second location where he began searching through her belongings. Here he removed two photographs from her wallet and placed them into his pocket.

The complaining witness testified that on three separate occasions the defendant required her to climb into the trunk of her car where she was locked inside from 5 to 15 minutes. The witness also testified that while sitting in the car the defendant smoked approximately three Pall Mall brand cigarettes.

The complaining witness testified that during her abduction she was instructed by the defendant to drive them to her bank in Lombard. At approximately 11:30 a.m. they reached the bank. She testified that defendant had her cash her paycheck and later withdrew $180 from a savings account. He then instructed her to return to Chicago, where he had her drop him off at an expressway exit. She testified that he took with him her money, the two pictures removed from her purse and an overnight bag. She then returned to her sister's home, where she contacted the police.

The complaining witness testified that on April 20, 1989, she was taken by police to a room to view a lineup of suspects but was rushed from the lineup room when one of the suspects began slouching and screaming. She was unable to see this suspect's face at the time. Several months later, on August 1, 1990, she was shown six photographs by an assistant State's Attorney and asked to identify her attacker. She identified the defendant.

Police officer Willoughby testified that the defendant was arrested for traffic violations and for possession of a stolen motor vehicle on April 3, 1989. On the morning of April 20, 1989, defendant was placed in a lineup and, according to the testimony of police officers Ryan and Zuley, bent over and threw himself on the floor, preventing his face from being seen. Officer Zuley testified that defendant stated following the lineup, "I fucked this thing up enough where any identification won't be worth shit and the line-up will be thrown out of court." Police officer Ryan also testified that on the morning of April 20, 1989, he observed defendant smoking Pall Mall cigarettes. Assistant State's Attorney Buckley testified that he conducted a photographic lineup for the complaining witness on August 1, 1990, and that she identified the defendant as being her attacker.

Investigator Harris testified that on August 24, 1989, he was given an assignment to execute a court order to have blood and saliva taken from the defendant. Harris testified that he showed the court order to the defendant and explained that defendant was compelled to give the samples. Defendant, however, refused to submit to the taking of samples. Harris received the same assignment on October 20, 1989, November 15, 1989, and finally on December 13, 1989. Only on this fourth attempt did defendant consent to the taking of samples. On

cross-examination Harris was asked by defendant, who appeared at trial *pro se*, if Harris recalled whether the defendant had refused the sampling based upon the advise of counsel. Harris indicated that he did not recall and stated, "Wasn't paying attention. I merely asked you to submit. You said 'no.' and I said that was all."

On December 28, 1989, Harris received an assignment to take the complaining witness to the hospital to have blood and saliva samples taken. She was transported by him to the hospital where the samples were taken. Harris also testified that he received an assignment on July 23, 1990, to have the defendant fingerprinted. Harris observed the defendant's fingerprints being taken by a technician. Subsequent witnesses tied the defendant's fingerprints to prints found in both the interior and exterior of the complaining witnesses' car and testified that body fluids found in the car and collected from the complaining witnesses' body were consistent with spermatozoa. These samples were also consistent with the defendant's body-fluid type. A latent fingerprint examiner, Victoria Psichalinos, testified, however, that when defendant's fingerprints were submitted to the Automatic Fingerprint Identification System (AFIS), AFIS did not return the defendant's name as a possible suspect. Psichalinos testified that she could not explain precisely why defendant was not identified as a possible match by AFIS, but suggested a number of possibilities as to why a match was not found.

Defendant was ordered to submit to blood sampling pursuant to Supreme Court Rule 413(a)(vii) (107 Ill. 2d R. 413(a)(vii)). Rule 413(a)(vii) provides for judicial orders compelling the taking of blood samples. Defendant, however, does not attack the validity or propriety of the court order. Indeed, both the United States Supreme Court, in *Schmerber v. California* (1966), 384 U.S. 757, 16 L. Ed. 2d 908, 86 S. Ct. 1826, and the Illinois Supreme Court, in *People v. Turner* (1973), 56 Ill. 2d 201, have upheld the constitutional validity of such testing. Instead, defendant argues that while his refusal to submit to blood sampling may have some probative value of his consciousness of guilt, and thus be relevant, the prejudice resulting from such testimony outweighs its probative value and this evidence should therefore be suppressed.

The State initially responds that the defendant failed to preserve his claim for appeal, noting that ordinarily both an objection at trial and a written post-trial motion are necessary to preserve issues for review. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186-88.) With regard to the testimony of defendant's initial refusal to submit to blood sam-

pling, the State points out that no objection was made at trial, nor was a written post-trial motion filed.

Defendant responds that the State may no longer insist on the filing of a written post-trial motion, and the State has conceded this point during oral argument. During a post-trial conference the defendant made an oral motion for a new trial. When asked by the trial court whether the State would object to the defendant's motion, the assistant State's Attorney responded, "No, your Honor. We will honor an oral motion." As the State now recognizes, it has waived its right to insist upon the filing of a written post-trial motion and defendant may now avail himself of any ground for a new trial which may appear in the record. *Enoch*, 122 Ill. 2d at 188.

Although defendant is not obligated to file a post-trial motion to preserve the current issue, he is still required to make a timely trial objection. (*People v. Wade* (1989), 131 Ill. 2d 370, 375 (issues not raised at the trial court level may not be raised for the first time on appeal); *Enoch*, 122 Ill. 2d at 186 (*both* trial objection *and* written post-trial motion required to preserve claim of error).) Because defendant did not object to the introduction of the testimony indicating his initial unwillingness to submit to the court-ordered blood test, this issue is waived.

We note, however, that even if the defendant had objected to the testimony regarding his refusal to submit to blood sampling, and had the trial court overruled this objection, we would not find in favor of the defendant. Defendant's initial refusal to submit to blood testing has some tendency to indicate a consciousness of guilt and is therefore relevant and generally admissible. (*People v. Roberts* (1983), 115 Ill. App. 3d 384, 387 ("Evidence of refusal to take a potentially incriminating test is similar to other circumstantial evidence of consciousness of guilt which may be inferred from a defendant's conduct").) While a trial court has discretion to exclude evidence that is relevant if the prejudicial effect of that evidence substantially outweighs its probative value (*People v. Eyler* (1989), 133 Ill. 2d 173, 218), a ruling against the defendant would not have been an abuse of discretion in this case, particularly where the facts indicate that the defendant repeatedly sought to hamper the police investigation closing in around him.

Defendant cites for support *People v. Townes* (1985), 130 Ill. App. 3d 844. In *Townes* the defendant had been arrested and served the same day with a search warrant requiring him to submit to the taking of body samples such as blood and fingernail clippings. The trial court admitted testimony of the defendant's refusal to submit to the war-

rant. On appeal, the appellate court concluded that evidence of the defendant's refusal to submit should have been excluded due to its dubious probative value. Two considerations influenced the court: (1) the short interval of time between when the defendant was apprehended and when the search warrant was served and (2) the fact that defendant indicated at the time of his refusal that he was only refusing to submit at that particular time. The court concluded in *Townes* that the defendant's refusal was "reasonably consistent with the response of a cautious innocent person who would want to seek the advice of counsel before submitting." *Townes*, 130 Ill. App. 3d at 859.

Neither of the two factors present in the *Townes* case is present here. Notably, defendant's repeated refusal to comply with court-ordered blood testing occurred over a period of nearly four months. While defendant attempted on cross-examination of Officer Harris to elicit testimony that his refusal was based upon the advice of counsel, he was unable to do so, and there is nothing in the record to indicate that this was the case. Thus, while the defendant in the *Townes* case acted in a way consistent with that of an innocent man, every indication in the present case, as noted, is that defendant deliberately sought to hamper the police investigation in order to conceal his guilt.

Finally, even if defendant were successful on this claim, a review of the overwhelming evidence of his guilt leads to the conclusion that any error by the trial court would have been harmless. See *Townes*, 130 Ill. App. 3d at 859 (affirming defendant's conviction despite erroneous admission of similar evidence).

Defendant's attempt to characterize his refusal to give blood as "acts of remaining silent," thereby implicating his fifth amendment rights, is unpersuasive. The cases cited by defendant involve constitutional concerns which are not present here. See *People v. Kennedy* (1975), 33 Ill. App. 3d 857; *People v. Warner* (1984), 121 Ill. App. 3d 322 (both involving a defendant's refusal to undergo voice sampling after being advised of the right to remain silent).

The judgment of the circuit court of Cook County is affirmed.

Affirmed.

McNAMARA, P.J., and EGAN, J., concur.