The PEOPLE of the State of
Colorado, Petitioner,

v.

Matthew SUMMITT, Respondent.

No. 04SC396.

Supreme Court of Colorado,
En Banc.

March 20, 2006.

Rehearing Denied April 10, 2006.*

---

* Justice MARTINEZ and Justice BENDER would grant the Petition.

Justice EID does not participate.

John W. Suthers, Attorney General, Matthew S. Holman, First Assistant Attorney General, Denver, for Petitioner.

David S. Kaplan, Colorado State Public Defender, Alan Kratz, Deputy State Public Defender, Denver, for Respondent.

HOBBS, Justice.

We granted certiorari to review the court of appeals' judgment in *People v. Summitt,* 104 P.3d 232 (Colo.App.2004), to determine whether it properly set aside convictions for second degree kidnapping, second degree assault, and domestic violence. The court of appeals ruled that the trial court abused its discretion in admitting evidence surrounding defendant's arrest, and admission of the evidence infringed unconstitutionally upon the exercise of defendant's Fourth Amendment rights.[1]

Taking into account proof before the jury, the circumstances of this case were that defendant seized the victim as she was entering her house, carried her off in his car, prevented her twice from escaping, pushed her from the moving car, repeatedly warned her not to tell third persons that he had pushed her out of the car, and left the hospital where the victim was being treated after being told by the woman's relatives to go home. The police arrested the defendant outside his home after they arrived, unsuccessfully sought consent from his mother to enter the home, learned that he was in the house by obtaining his driver's license through the door, and told his mother that if defendant did not come out of the house they would wait until they had

---

1. We granted certiorari on the following prosecution issues:

    1. Whether the admission of a defendant's refusal to submit to a warrantless arrest while in his home for the purpose of proving his consciousness of guilt should be decided under the Colorado Rules of Evidence rather than on constitutional grounds.

    2. Whether it was constitutional error for the trial court to admit evidence that a defendant refused to submit to a warrantless arrest while in his home for the purpose of proving consciousness of guilt.

obtained an arrest warrant and arrest him. He then came out and was placed under arrest.

The trial court ruled that the circumstances surrounding the arrest were relevant to show defendant's consciousness of guilt as part of the defendant's efforts to conceal his crime and avoid arrest; the trial court also instructed the jury that defendant had the constitutional right to remain in his home until the police had secured an arrest warrant.

We hold that the trial court abused its discretion in admitting the circumstances of the arrest to show consciousness of guilt, because there was no evidence in the case that defendant was in flight and avoiding arrest. However, we disagree with the court of appeals that admission of this evidence burdened unconstitutionally the exercise of defendant's Fourth Amendment rights; and we find that the trial court's evidentiary ruling error was harmless and does not warrant reversal. Accordingly, we reverse the judgment of the court of appeals and remand this case with directions to reinstate defendant's convictions.

## I.

Evidence before the jury of the circumstances giving rise to the arrest of Matthew Summitt ("Summitt") included the following. After driving the victim home to her house from a bar late at night, Summitt became angry with her when she wanted the evening to end. Summitt knocked her down outside the house, slung her over his shoulders, carried her to his car, and drove away. He drove the car into a ditch, causing a flat tire. The victim tried to escape twice while he tried to fix the flat. Both times Summitt forced her back into the car.

Unable to fix the flat, Summitt restarted the car and began driving at a high rate of speed. The victim opened the passenger side door looking for another opportunity to escape. Summitt pushed her out of the moving car.[2] He then stopped, put her back in the car, and drove her back to her house, where she lived with an aunt and uncle. While at her house, Summitt warned the victim not to tell anyone he had pushed her out of the car.

The victim's aunt and uncle drove her to the hospital. Sometime later, Summitt arrived at the hospital. While at the hospital, Summitt again warned the victim in the presence of the aunt not to tell anyone he had pushed her.[3] The victim's uncle told Summitt at the hospital "there [was not] any reason for [Summitt] to be [at the hospital], and the best thing would be for [Summitt] to just go home." The victim's aunt also told Summitt to leave. When asked at trial why she had said this to him, she replied "[b]ecause he was going to be arrested." Summitt left the hospital before the police arrived and drove to his house, where he lived with his mother.

Upon arriving at the hospital, the police interviewed the victim and her aunt and uncle. From the interviews, the police determined Summitt's address and sent a number of officers to that location. The police had an interchange with Summitt's mother, obtained his driver's license through a slit in a screen door, and, when they did not obtain her consent to enter the house, they said they would stay outside until an arrest warrant arrived and arrest him. Summitt then exited the house and submitted to arrest.

At trial, the prosecutor told the jury in opening statement that they should pay attention to the circumstances of Summitt's arrest as important in fitting the pieces of the case together. During the prosecution's case-in-chief, when Deputy Long began to testify regarding Summitt's refusal to exit the house and his mother's refusal to allow the police to enter, defense counsel objected, asserting that the testimony commented improperly on Summitt's constitutional rights. The trial court sustained the objection, but allowed the officer's testimony prior to the objection—which related to the circum-

---

**2.** Defense counsel at trial suggested through cross-examination and closing argument that the victim had jumped from the car and injured herself.

**3.** Defense counsel at trial argued that the victim was lying about being pushed out of the car, and Summitt was protesting the lie.

stances surrounding Summitt's arrest—to be admitted as evidence of Summitt's consciousness of guilt.

> I think the question has gone as far as I'm going to allow it to go. I'll sustain the objection, and I will make the comment that the defendant—I'm allowing this testimony to come in, as it relates to the defendant's consciousness of guilt, and for no other matter. I will also advise the jury that the police, before they can enter anybody's home, even for arrest of that person, are required, by law, to obtain ... an arrest warrant, and that a person is not required to allow a police officer into his or her home.

At the close of evidence, prior to bringing the jury into the courtroom and reading instructions, the trial court again clarified that Summitt had a right to remain in his home until the police obtained an arrest warrant, but that he did not have the right to avoid arrest.

> I want to make a comment about an issue that came up yesterday. It involved the testimony regarding what occurred at the defendant's home. There had been an objection raised to that, and the Court did give a curative instruction to the jury, an oral instruction to the jury. The court just wants to expand, I suppose, on the record. Although the defendant does have a right, pursuant to constitution, to be secure in his home, and that the police had no authority to go into his home to affect an arrest, even in this situation, absent a warrant, the defendant did not have a right to avoid arrest, and so therefore I believe that the testimony was, in fact, relevant, and not unduly prejudicial or inappropriately prejudicial to the Defendant.

During rebuttal closing argument, the prosecutor referred to the circumstances surrounding Summitt's arrest as "hiding" and "huddling" in the house. The prosecution added the following comment on flight, avoidance of arrest, and consciousness of guilt:

> (After leaving the hospital) where did he go? He ran, and hid, behind his mother's doors, and he stayed there until the cops flushed him out. Is that the conduct of a guy that's done nothing wrong, members

of the jury? Or is that somebody huddled up inside, scared out of his wits, that finally the jig is up and he is going to be held responsible for what he has done? And I suggest to you it's the latter.

The jury convicted Summitt of second degree kidnapping, second degree assault, and domestic violence. Summitt appealed these convictions to the court of appeals. He asserted, in part, that the evidence of his refusal of the police request to exit the house was not relevant to show consciousness of guilt. He also contended that admission of the evidence unconstitutionally implicated his Fourth Amendment rights. The court of appeals agreed with Summitt on both points. Applying constitutional harmless error analysis, it reversed the convictions and remanded the case for a new trial.

On appeal to us, the prosecution contends that the court of appeals erred in its constitutional holding and that this case more properly involves an evidentiary analysis. We agree on both of these points. However, in employing an evidentiary analysis, we conclude that the evidence surrounding the circumstances of Summitt's arrest did not show that Summitt went to and remained in the house in the course of flight and avoiding arrest. Accordingly, admission of the evidence to show consciousness of guilt was an abuse of discretion. Nevertheless, the admission of the evidence did not unconstitutionally infringe upon or burden Summitt's Fourth Amendment rights, and the evidentiary ruling error was harmless.

## II.

We hold that the trial court abused its discretion in admitting the circumstances of the arrest to show consciousness of guilt, because there was no evidence in the case that defendant was in flight and concealing himself to avoid arrest. However, we disagree with the court of appeals that admission of this evidence burdened unconstitutionally the exercise of defendant's Fourth Amendment rights; and we find that the trial court's evidentiary ruling error was harmless and does not warrant reversal.

## A.

### Standard of Review

■ A reviewing court may not reverse a trial court's decision to admit or exclude evidence absent a showing that the trial court abused its discretion. *People v. Welsh*, 80 P.3d 296, 304 (Colo.2003). To overcome this presumption in favor of the trial court's ruling, the appellant must demonstrate the decision was "manifestly arbitrary, unreasonable, or unfair." *Id.*

## B.

### Evidence of Concealment, Flight, and Avoidance of Arrest to Show Consciousness of Guilt

■ Relevant evidence is evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." CRE 401. If the evidence is logically relevant to a consequential fact, the court must then determine whether, under CRE 403, the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. *People v. Carlson*, 712 P.2d 1018, 1022 (Colo.1986). In reaching its decision, the trial court must determine whether and how the evidence at issue is relevant to the case and, if so, to what extent its probative value might be outweighed by any unfair prejudice to the defendant. *Welsh*, 80 P.3d at 304.

■ The test of relevancy is whether it renders the claimed inference more probable than it would be without the evidence. *Bush v. Jackson*, 191 Colo. 249, 251, 552 P.2d 509, 511 (1976). According to this test, it does not matter that other inferences may be equally probable; it is for the jury to determine what motivated the behavior. *Id.*

■ Evidence of flight and concealment to avoid arrest can be admissible to show consciousness of guilt, *People v. Bates*, 190 Colo. 291, 294, 546 P.2d 491, 493 (1976), "but only if it can be shown the defendant was aware he or she was being sought," *People v. Perry*, 68 P.3d 472, 475 (Colo.App.2002) (internal citations omitted); *see also Ortega v.*

*People*, 162 Colo. 358, 364, 426 P.2d 180, 183 (1967) ("[T]he defendant's conduct at the time of arrest may properly be shown as a circumstance tending to show consciousness of guilt."); 1 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 85, at 420 (1994) ("Proof that after the charged crime the accused acted in ways apparently calculated to avoid detection, arrest, prosecution, or conviction is often relevant in suggesting a guilty mind."). Flight means a deliberate attempt to avoid detection and arrest. *People v. Morant*, 179 Colo. 287, 292, 499 P.2d 1173, 1176 (1972); *Gallegos v. People*, 166 Colo. 409, 415, 444 P.2d 267, 270 (1968).

■ Such evidence can be relevant because "[f]rom a guilty mind, guilt itself may be inferred." 1 Mueller & Kirkpatrick, *supra*, § 85, at 420 (going on to discuss the circumstantial nature of such evidence, its dependence on inferences, and cautioning against its potential misuse). Although admissible, such evidence is "universally considered to be insufficient, standing alone, to support a conviction." *Id.* at 421–22 (flight evidence is insufficient, standing alone, to support a conviction); *see also Bernard v. People*, 124 Colo. 424, 426, 238 P.2d 852, 853 (1951) (holding evidence of escape and flight "is admissible, not in proof of the crime itself, but in corroboration of other evidence thereof"); *see also United States v. Rahseparian*, 231 F.3d 1257, 1263 (10th Cir.2000) (in a mail fraud case, distinguishing between use of false exculpatory statements "to prove circumstantially consciousness of guilt [rather than] as direct evidence of guilt").

## C.

### Application to this Case

■ The court of appeals ruled that the evidence the trial court admitted regarding the circumstances of Summitt's arrest was not relevant to Summitt's consciousness of guilt. *Summitt*, 104 P.3d at 236. We agree that the trial court's admission of the circumstances of the arrest to show consciousness of guilt was error, because this proffered evidence did not show that Summitt was in flight or was concealing himself to avoid ar-

rest. At best, this evidence only showed that Summitt did not come out of the house while his mother was talking to the police about their request to enter without a warrant. They knew he was in the house because they obtained his driver's license through the door and saw him through a window. Remaining in a house while the police are attempting to gain consent to enter is not evidence of concealment and avoidance of arrest.

While the record contains evidence that Summitt told the victim not to say he pushed her from the car, it lacks proof of flight and concealment to avoid arrest. The victim testified that Summitt pushed her out of the car and repeatedly warned her in route to her house and at the hospital not to tell anyone he had pushed her from the car. The victim's aunt testified that Summitt, at the hospital, told the victim not to tell anyone about the circumstances of her injury.

Although the trial court allowed the jury to find that Summitt was avoiding arrest, the evidence on this point was lacking. Rather, the evidence showed that Summitt left the hospital and went home after the victim's aunt and uncle urged him to leave. The uncle's testimony says nothing about telling Summitt the police were on the way and he would be arrested if he did not leave; rather, the uncle simply said to him there was no reason for him to be at the hospital and he should go home. The aunt's testimony was that she also told Summitt to go home; while she testified that her motivation for saying this was he would be arrested at the hospital, there was no testimony that she told him the police were on the way and he would be arrested if he did not leave.

(Prosecutor)

Q. All right. At the emergency room, did Mr. Summitt show up?

A. Yes.

Q. Okay. Did you ever tell him to leave?

A. Yes.

Q. Okay. Why did you tell him to leave?

A. Because he was going to be arrested.

\* \* \*

(Defense Attorney)

Q. Do you remember, telling her, that at some point Matt did ask are you okay?

A. When—when Matt walked into the room, he says something went up to (the victim), and said up to her ear, and I kept telling him, you have got to go, you have got to go, because I knew the cops were coming. Did I actually hear him say, are you okay, no, I did not.

This evidence suggests only that the victim's aunt was thinking the police might be coming, not that she actually conveyed such a thought to him or that they were actually on their way to arrest him. Our cases describe flight as a deliberate attempt to avoid detection and arrest. *See Gallegos v. People*, 166 Colo. 409, 415, 444 P.2d 267, 270 (1968). Here, the evidence showed only that Summitt left the hospital and went back to his house after the uncle and the aunt told him to leave.

Likewise, the police officers' testimony concerning the circumstances of the arrest at Summitt's home shows only that Summitt did not come out of the house during the time they were asking his mother for consent to enter the house. Summitt was not avoiding detection because he produced his driver's license through the door, and the police saw him looking through a window of the house. After she refused consent to enter, the police then explained they had the house surrounded and would stay while they obtained a warrant for his arrest. Summitt then came out of the house.

The trial court did not explain its rationale for allowing admission of the circumstances surrounding Summitt's arrest, other than to say he was allowing it for the purpose of showing consciousness of guilt. However, up to that point in the testimony at trial, there was no foundation in the evidence to show that Summitt was in flight and concealing himself to avoid detection and arrest. The police did not initially make the mother aware they were there to arrest Summitt; they said this only after being refused consent to enter.

Under these circumstances, the evidence that Summitt was remaining in his house while his mother talked to the police at the door seeking consent to enter lacked probative value on the issue of flight and conceal-

ment to avoid arrest. Our cases require proof that defendant fled and was concealing himself to avoid apprehension. *See People v. Fletcher*, 193 Colo. 314, 318, 566 P.2d 345, 348 (1977) (stating that giving a flight instruction is not error when there is proof that defendant fled or concealed himself for any length of time to frustrate his apprehension); *Robinson v. People*, 114 Colo. 381, 386, 165 P.2d 763, 765 (1946); *see* 1 Mueller & Kirkpatrick, *supra*, § 85, at 422–23 (resolving whether behavior indicates flight "turns heavily on other circumstances (like the awareness of the accused that he was being sought in connection with the crime)").

We conclude that the trial court erred in its evidentiary ruling; contrary to its ruling, the fact that Summitt remained in the house while the police talked to his mother about obtaining consent to enter was not relevant to show his consciousness of guilt. We now turn to the court of appeals' constitutional holding, before taking up the harmless error question.

### D.

### Summitt's Fourth Amendment Rights

■ The court of appeals held that admission of the evidence surrounding Summitt's arrest "place[d] the defendant on the horns of a dilemma: either abandon his right to privacy by leaving a constitutionally protected area and surrendering to what may be an unlawful arrest or refuse to surrender and thereby create evidence of self-accusation." *Summitt*, 104 P.3d at 236. The court of appeals reasoned that Summitt was not avoiding detection and arrest because he provided his license to the police and did not attempt to surreptitiously leave the house after the police arrived. While we agree with the court of appeals on this point, we disagree that the trial court's evidentiary ruling violated Summitt's Fourth Amendment rights.

Contrary to the analysis of the court of appeals and the arguments of the defendant, this case does not raise a Fourth Amendment issue because (1) the police never entered Summitt's home and (2) the record does not

show that he was standing on his right to have the police obtain an arrest warrant. To the contrary, the evidence shows that Summitt voluntarily exited his home after the police told his mother they were in the process of obtaining an arrest warrant.

Summitt analogizes his constitutional claim to the United States Supreme Court's analysis in *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), and *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). In *Griffin*, the Court held that a state could not make adverse inferences on the defendant's refusal to testify under the Fifth Amendment's prohibition on requiring a defendant to incriminate himself. 380 U.S. at 614–15, 85 S.Ct. 1229. The state's negative comments on the defendant's failure to testify in that case violated the Fifth Amendment. *Id.* at 615, 85 S.Ct. 1229.

Expanding on this, in *Doyle*, the United States Supreme Court held that using a defendant's silence for impeachment purposes after he received the *Miranda* warnings violated the Due Process Clause of the Fourteenth Amendment. 426 U.S. at 619, 96 S.Ct. 2240. The Court reasoned that an accused's silence after receiving *Miranda* warnings could mean nothing more than the individual's decision to exercise those rights. *Id.* at 617, 96 S.Ct. 2240. The Court also noted that, while *Miranda* warnings contain no express assurance that an accused's choice to remain silent will not carry a penalty, this promise is implicit in those warnings; thus, using defendant's silence to impeach at trial his or her explanation of the events was fundamentally unfair. *Id.* at 618, 96 S.Ct. 2240.

From this precedent, Summitt argues that *Griffin* and *Doyle* prohibit the prosecution from using evidence surrounding a defendant's exercise of a constitutional right as evidence of guilt because it would penalize exercise of that right—in this case, Summitt's Fourth Amendment right to insist on an arrest warrant while in the privacy of his own home. *See McCall v. People*, 623 P.2d 397, 401 (Colo.1981) (citing *Payton v. New York*, 445 U.S. 573, 589, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980)).

But, to raise such a claim, Summitt would have to show that he was insisting on the police obtaining an arrest warrant and remained in his home until they had one. To the contrary, the evidence in this case was that he voluntarily exited the house when the police told his mother that they would wait there until they obtained an arrest warrant.

Thus, the record here is devoid of police non-consensual entry into Summitt's home, or that his remaining in the home for a time while the police were negotiating for entry, or for him to come out, was in any way connected to his interest in requiring the police to obtain an arrest warrant. In light of the record, the court of appeals erred in finding a violation of Summitt's Fourth Amendment rights.

## E.

### Harmless Error

Even when a trial court may have abused its discretion in admitting certain evidence, reversal is not required if the error was harmless under the circumstances. *People v. Bastardo*, 191 Colo. 521, 526, 554 P.2d 297, 301–02 (1976). In regard to evidentiary trial error, harmless error analysis requires an inquiry into whether, viewing the evidence as a whole, the contested evidence substantially influenced the verdict or affected the fairness of the trial proceedings. *Medina v. People*, 114 P.3d 845, 858 (Colo.2005); *People v. Quintana*, 665 P.2d 605, 612 (Colo.1983). Only error that affects the "substantial rights" of the defendant may warrant reversal. C.A.R. 35(e); *People v. Welsh*, 80 P.3d 296, 310 (Colo.2003).

An error in a criminal trial will be disregarded if there is not a reasonable possibility that it contributed to the jury's guilty verdict. *Tevlin v. People*, 715 P.2d 338, 342 (Colo.1986). If properly admitted evidence overwhelmingly shows guilt, the error is harmless. *See id.*

Reviewing the evidence as a whole, we find uncontroverted testimony proving Summitt's guilt on the kidnap, assault, and domestic abuse charges for which the jury convicted him. He abused the victim verbally, calling her "a whore" when she wanted to end the evening; pushed her to the ground outside her home; seized her; carried her to his car; prevented her twice from escaping; pushed her out of the car while speeding away, causing her serious injury; and repeatedly attempted to bully her into not telling her story of the crimes.

Seven witnesses testified during the trial: the victim, the doctor who treated the victim, two police officers involved in the investigation, the victim's aunt and uncle, and an investigator hired by Summitt's attorney. The victim testified in great detail regarding the events of the evening, and specifically testified that Summitt pushed her from the car.

Of the remaining six witnesses, three testified, without objection, that the victim separately told each of them Summitt pushed her from the car. First, the doctor who examined the victim after the accident testified that the victim told him that Summitt pushed her from the car. The police officer who interviewed the victim at the hospital also corroborated this fact. The officer testified that, during his interview of the victim at the hospital, the victim told him that Summitt pushed her from the car. Finally, the victim's aunt, a defense witness, testified that the victim told her that Summitt pushed her from the car.

Given the overwhelming proof in the record that Summitt committed the crimes for which the jury convicted him, we conclude the trial court's evidentiary error was harmless and did not substantially influence the verdict or affect the fairness of the trial proceedings.

Although the prosecution's closing argument contained comment on the circumstances of the arrest to show consciousness of guilt, we do not consider this to be grounds for setting aside Summitt's convictions. First, the defense did not object to the argument. Second, even if no defense objection need have been made in light of the trial court's admission of the circumstances of arrest, *see Salcedo v. People*, 999 P.2d 833, 841 (Colo.2000), the trial court also instructed the jury that Summitt had the right to remain in the house until the police obtained an

arrest warrant. In light of this instruction, it is logical and permissible to conclude that the jury followed the instruction, *see Copeland v. People,* 2 P.3d 1283, 1288 (Colo.2000), and that (1) the jury gave little or no weight to the circumstances of the arrest in finding Summitt guilty and (2) admission of the circumstances of arrest and the prosecutor's comment were not so prejudicial as to require reversal.

## III.

Accordingly, we reverse the court of appeals' judgment and remand this case to it with directions to reinstate Summitt's convictions.

MARTINEZ, J., concurring in part, dissenting in part, and dissenting from the judgment.

COATS, J., concurring in part and in the judgment.

EID, J., does not participate.

Justice MARTINEZ concurring in part, dissenting in part, and dissenting from the judgment.

I agree with the majority that whether Summitt's conviction must be reversed due to the trial court's admission of arrest evidence poses an evidentiary issue and not a constitutional question. I further agree that the arrest evidence lacked probative value and, therefore, was inadmissible. The majority and I part ways, however, on whether the admission of this prejudicial evidence was harmless error. I conclude that the admission into evidence of the arrest evidence warrants the reversal of Summitt's conviction because of the inherently prejudicial nature of arrest evidence, aggravated by the prosecutor's repeated remarks and the trial court's erroneous instruction on consciousness of guilt. In contrast, the majority fails to consider the effect of the prosecutor's remarks about the arrest evidence and considers the error harmless. Maj. op. at 372–78. Accordingly, I concur with sections I. and II.A.—II.D. of the majority opinion and respectfully dissent from section II.E. and the judgment.

## I. Harmless Error Analysis

An appellate court must apply the harmless error standard to determine whether a case must be retried for the erroneous admission of improper evidence despite a timely objection. *People v. Quintana,* 665 P.2d 605, 612 (Colo.1983). The harmless error test requires an inquiry into whether the contested evidence substantially influenced the verdict or affected the fairness of the trial proceedings. *Id.* The proper inquiry is not whether there was sufficient evidence to support the guilty verdict without the improperly admitted evidence but, rather, whether the contested evidence substantially influenced the verdict or affected the fairness of the trial proceedings. *Masters v. People,* 58 P.3d 979, 1003 (Colo.2002). Only error that affected the "substantial rights of the parties" warrants reversal. C.A.R. 35(e); *People v. Welsh,* 80 P.3d 296, 310 (Colo.2003).

To determine whether Summitt's substantial rights were affected by the admission of the circumstances surrounding his arrest, I review the prejudicial nature of arrest evidence, the prosecutor's comment on the evidence, and the trial court's response in light of the evidence before the jury. The prosecutor's comments on evidence wrongfully admitted are a proper consideration in the harmless error analysis, notwithstanding the majority's statement that it need not review the effect of the comments because the defendant did not object during closing argument. *Salcedo v. People,* 999 P.2d 833, 841 (Colo.2000).

Evidence on the events surrounding Summitt's arrest affected how the jury perceived him in a prejudicial manner. I analogize the effect of this evidence to requiring a defendant to wear shackles or a prison uniform: a subconscious instruction to the jury that a defendant is dangerous and should be treated like a criminal. Dressing a defendant as a dangerous criminal, instead of as an individual afforded the presumption of innocence, may interfere with the jury's determination as to the guilt or innocence of the defendant. *Eaddy v. People,* 115 Colo. 488, 492, 174 P.2d 717, 718 (1946) ("the presumption of innocence requires the garb of innocence ..."); *see Illinois v. Allen,* 397 U.S. 337, 344, 90

S.Ct. 1057, 25 L.Ed.2d 353 (1970) ("[T]he sight of shackles and gags might have a significant effect on the jury's feelings about the defendant . . . ."). And the use of shackles or prison uniforms "suggests to the jury that the justice system itself sees a 'need to separate a defendant from the community at large.'" *Deck v. Missouri*, 544 U.S. 622, 125 S.Ct. 2007, 2013, 161 L.Ed.2d 953 (2005) (citing *Holbrook v. Flynn*, 475 U.S. 560, 569, 106 S.Ct. 1340, 89 L.Ed.2d 525 (1986)).

Similar to forcing a defendant to wear shackles or a prison uniform in front of the jury, testimony about a defendant's arrest informs the jury about how the police thought the defendant should be treated and that he should be jailed. In this case, the testimony about the events surrounding Summitt's arrest branded him a dangerous criminal in the eyes of the jury. Deputy Rusk testified that at least five law enforcement officers, from two jurisdictions, surrounded Summitt's house. Deputy Long testified to six law enforcement officers surrounding the residence. This testimony informed the jurors that the police considered Summitt so dangerous as to require the assistance of a multitude of officers. Similarly, Deputy Long testified that at least one police officer was watching the back corner of the defendant's house, strongly suggesting that the defendant was considered a flight risk. Although the suggestion of the defendant's dangerousness was somewhat diminished because the police did not enter his home and arrest him without a warrant, this testimony evoked images of a dangerous defendant whose hide-out was surrounded by a small battalion of armed police officers. Such testimony branded Summitt in the eyes of the jurors "with an unmistakable mark of guilt." *Holbrook v. Flynn*, 475 U.S. 560, 571, 106 S.Ct. 1340, 89 L.Ed.2d 525 (1986) (quoting *Estelle v. Williams*, 425 U.S. 501, 518, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976) (Brennan, J., dissenting)).

The prosecutor took advantage of the prejudicial nature of arrest evidence by repeatedly emphasizing and misstating the circumstances of Summitt's arrest throughout the trial. In *Salcedo*, this court determined that the prosecutor's drawing attention to the wrongly admitted evidence once during closing argument warranted reversal. *Salcedo*, 999 P.2d at 841; *see also People v. Suazo*, 87 P.3d 124, 127 (Colo.App.2003). Here, the error is more egregious because the State continuously stressed the erroneously admitted arrest evidence.

During opening argument, the prosecutor stated: "Finally, ladies and gentlemen, pay attention to how Mr. Summitt is apprehended. There will be another important part of how the pieces fit together in this case." In their case-in-chief, the prosecution called four witnesses, two of whom testified about Summitt's arrest.[4] Also, during the State's rebuttal closing, the prosecutor rhetorically asked:

> [After leaving the hospital] where did he go? *He ran, and hid, behind his mother's doors, and he stayed there until the cops flushed him out. Is that the conduct of a guy that's done nothing wrong*, members of the jury? Or is that somebody huddled up inside, scared out of his wits, that finally the jig is up and he is going to be held responsible for what he has done? And I suggest to you it's the latter.

(Emphasis added.) The prosecutor's rebuttal closing played on the inherently prejudicial nature of arrest evidence by depicting Summitt as a guilty defendant hiding out behind the walls of his home while the police adeptly brought him to justice. These comments further mischaracterized the defendant's actions as flight evidence, which the majority correctly determined was inadmissible. Thus, a significant portion of the prosecutor's case erroneously revolved around the defendant's arrest as part of a pattern of avoidance and flight.

The majority discounts the effect of the prosecutor's remarks because the defendant did not object to the argument. Maj. op. at 327–28. The defense preserved the error by objecting to the admission of the evidence. *See People v. Dunlap*, 975 P.2d 723, 745 (Colo.1999). After the trial court admitted the evidence, it was not merely unnecessary

---

**4.** In addition to the testimony of the deputy sheriffs, a doctor testified as to the extent of the victim's injuries and the victim testified about the incident.

for the defense to object to the State's closing argument, it would have been improper. The arrest evidence was admitted; the State could properly refer to the admitted evidence in its argument. *People v. Ferrell*, 200 Colo. 128, 131, 613 P.2d 324, 326 (Colo.1980). The error was in the admission of the evidence, to which the defense objected. Nevertheless, the comment aggravated the error of the wrongfully admitted evidence and, therefore, it is a proper consideration in the harmless error determination. *Salcedo*, 999 P.2d at 841; *People v. Summitt*, 104 P.3d 232, 237 (Colo.App.2004).

The trial court's instructions exacerbated the prosecutor's impermissible focus. After the defense attorney objected to Deputy Long's testimony about the events surrounding Summitt's arrest, the trial court sustained counsel's objection but allowed the previous testimony to come in "as it *relates to the defendant's consciousness of guilt,* and for no other matter." (Emphasis added.) The trial court's statements suggested to the jury that Summitt's guilty knowledge was why he initially decided to remain in his home. These remarks instructed the jury to consider the inadmissible circumstances of Summitt's arrest for the impermissible purpose of consciousness of guilt. Due in part to the respect afforded to the trial judge by the jury and the judge's instruction that he would explain the law to the jury, the court's instruction likely impacted the weight the jury attached to Summitt's supposed consciousness of guilt, which compounded the error of admitting the evidence of arrest. *See Welsh*, 80 P.3d at 311.

The trial court continued:

I will also advise the jury that the police, before they can enter anybody's home, even for arrest of that person, are required by law, to obtain a—an arrest warrant, and that a person is not required to allow a police officer into his or her home.

The trial court's second instruction left the determination of whether Summitt's acts evidenced his consciousness of guilt or showed his desire that the police obtain a search warrant to the jury. The combination of these two instructions encouraged the jury to speculate about why Summitt remained in his home and resulted in unfair prejudice to the defendant.

The evidence offered at trial was not so overwhelming as to overcome the prejudicial nature of the arrest evidence. Specifically, the People offered no physical evidence corroborating the defendant's guilt. The prosecution's only physical evidence was medical evidence about the extent of the victim's injuries. This medical evidence was consistent both with the prosecution's theory that Summitt pushed the victim out of his car and the defendant's theory that she accidentally fell out of the car.

Due to the lack of physical evidence, the prosecution's case depended on the jury believing the victim's statement of the incident. Several of her statements could be interpreted as logically problematic and, therefore, supporting the defendant's theory of the case. For example, the victim testified that Summitt forced her into his car and then simultaneously restrained her in the passenger seat with one hand and started, steered, and shifted his manual automobile. Putting the key into the ignition, steering, and shifting would have been difficult to manage while holding a victim in the right-hand, passenger seat because each would typically involve the use of the driver's right hand. Furthermore, although the victim testified that Summitt told her not to tell anyone he pushed her, on cross-examination she admitted that the defendant stated that he did not push her and that she better not tell people that he did. The prosecution used Summitt's statement to depict him as a bully who went to the hospital to force the victim into not telling anyone he pushed her out of the car. Yet, the evidence also supports the defense case that Summitt was only protesting misinformation.

The victim's account of the incident, while believable, was not so obviously accurate that the jury was not influenced by the inadmissible evidence of Summitt's arrest. Accordingly, I believe the arrest evidence weighed heavily on the credibility issue and, therefore, substantially influenced the verdict and affected the fairness of the trial proceedings. *See* C.A.R. 35(e); *Welsh*, 80 P.3d at 310; *People v. Quintana*, 665 P.2d at 612. Thus, the admission of the circumstances surrounding Summitt's arrest into evidence cannot be deemed harmless error.

## II. Conclusion

Because I do not consider the admission of arrest evidence harmless, I would reverse Summitt's conviction.

I am authorized to state that JUSTICE BENDER joins in this concurrence and dissent.

Justice COATS, concurring in part and in the judgment.

Although I too would reverse the judgment of the court of appeals and reinstate the defendant's convictions, I do not agree that the trial court abused its discretion by admitting limited evidence of the defendant's arrest. I not only consider the majority's discussion of this point to be substantially misguided; but in light of its own conclusion that admission of this evidence was harmless, its opinion about consciousness of guilt has absolutely no effect on its ultimate judgment, and I therefore consider it gratuitous as well.

The majority opines that evidence concerning the circumstances of the defendant's arrest could have been relevant to show his consciousness of guilt only if it demonstrated that he knew the police were trying to arrest him and his conduct amounted to a deliberate attempt to avoid being arrested. Here, it considered the evidence inadequate, largely because no one but the defendant's mother testified that he was expressly told the police were waiting outside his house to arrest him; and when she relayed this information to him, he gave himself up. To my mind, this analysis misses the mark, both because the majority misperceives the general nature of a relevancy determination and because it misperceives the respective responsibilities of the trial court and jury in evaluating a condition of fact upon which the relevance of particular evidence depends.

With regard to the latter, even if nothing short of a deliberate attempt by the defendant to avoid arrest could be considered probative of his consciousness of guilt, I believe the majority mistakenly concludes that the evidence in this case was insufficient. Where the relevance of evidence depends upon the fulfillment of a condition of fact, neither the trial court nor a reviewing court serves as the trier of fact. Rather, the rules of evidence require the trial court to admit the evidence upon or subject to the introduction of evidence sufficient to support a finding by the jury of that condition of fact. CRE 104(b) (Relevancy conditioned on fact). Only if there is no evidence from which reasonable jurors could find the condition of fact should the challenged evidence be rejected as irrelevant.

Here the record clearly contained evidence from which reasonable jurors could conclude that the defendant was aware the police were surrounding his house to arrest him, and yet for some time he refused to submit. It was clear that the defendant returned home from the hospital, aware of the victim's injuries and her accusation that he had pushed her from the moving car in which he was transporting her against her will. It was also clear that when Deputy Long arrived, there were already as many as four police officers openly watching the front and back of the house. Long testified that he could see someone, whom he believed to be the defendant, peeking from the window, and that he had asked the defendant to come out, without success. The jury also heard that police officers from Brighton had already made contact with the person who was inside, and although he was willing to give them a driver's license through a slit in the screen, he refused to come out.

Whether or not anyone besides the defendant's mother actually told him that the police believed they already had probable cause for an arrest or that they would sit on the house until a warrant arrived, it is unrealistic to suggest that this evidence was not sufficient for reasonable jurors to infer that the defendant believed the police were surrounding his house to arrest him. The fact that he eventually came out, after being faced with the inevitable, in no way precluded a reasonable inference that he delayed and avoided arrest as long as he thought it advantageous or had any hope of being rescued from the situation. If deliberately avoiding arrest can be probative of the defendant's consciousness of guilt, as even the majority concedes, the trial court did not act improperly under these circumstances in permitting the jury to decide whether the defendant was actually avoiding arrest.

More fundamentally, however, I believe the majority's analysis betrays a kind of mechanical, pigeonholing approach to the analysis of relevancy, which has been squarely rejected in this jurisdiction (at least since the adoption of the Colorado Rules of Evidence) as unduly limiting trial court discretion. Quite apart from a specific attempt to avoid police apprehension and thwart an imminent arrest, efforts of all kinds to delay or hinder an investigation are widely acknowledged to be probative of a defendant's consciousness of his guilt. *See, e.g., Moore v. United States,* 757 A.2d 78, 83 (D.C.2000) ("Given [defendant's] suspicious denial that he was not driving a stolen car, the jury could very well infer that [defendant] knew he was driving a stolen car and that his intent in approaching Officer Bryant was to discourage any police investigation of his crime."); *Commonwealth v. Johnson,* 46 Mass.App.Ct. 398, 706 N.E.2d 716, 722 (1999) (evidence that defendant twice failed to attend voice identification line-up properly admitted to show consciousness of guilt); *Commonwealth v. Johnson,* 542 Pa. 384, 668 A.2d 97, 106–07 (1995) (reasoning jury may infer defendant refused to participate in line-up because of his fear of identification due to his consciousness of guilt); *U.S. v. Meling,* 47 F.3d 1546, 1557 (9th Cir.1995) (evidence of defendant's attempts to hinder FBI's investigation properly admitted to show consciousness of guilt); *People v. Edwards,* 241 Ill.App.3d 839, 182 Ill.Dec. 428, 609 N.E.2d 962, 966 (1993) ("Defendant's initial refusal to submit to blood testing has some tendency to indicate a consciousness of guilt and is therefore relevant and generally admissible."); *Marshall v. State,* 85 Md.App. 320, 583 A.2d 1109, 1111 (1991) ("Interference with police investigation is recognized as conduct which may evidence a consciousness of guilt."); *State v. Sayles,* 124 Wis.2d 593, 370 N.W.2d 265, 267 (1985) (finding error in trial court's rejection of defendant's testimony that he refused blood alcohol test because he wanted to consult his attorney first, after evidence of defendant's refusal was admitted to show consciousness of guilt); *State v. Mottram,* 158 Me. 325, 184 A.2d 225, 230 (1962) (noting "consciousness of guilt could be shown by evidence that a witness refused to take a lie detector test on the ground that he believed the test was trustworthy or dependable.").

The reasons for not limiting the proof of consciousness of guilt to narrowly circumscribed categories have long been acknowledged and articulated. "[O]ne of the common and established uses of the mode of reasoning here involved is the inference from *guilty conduct* to the *commission of the guilty deed* ...." 2 John Henry Wigmore, *Evidence In Trials At Common Law* § 273(1) (James H. Chadbourn Rev.1979) (emphasis in original). "In general, it may be premised, that almost any conduct *may* be open to this inference. The kinds of behavior which may properly suggest such a cause are beyond enumeration; they are as various and as changeable as men's dispositions and emotions. No conduct is conclusive; but on the other hand, almost no conduct is entirely without significance, greater or less according to the circumstances ...." *Id.* (emphasis in original). " 'Is a flight the only outward evidence of conscious guilt? So far from it, any indications of it, arising from the conduct, demeanor, or expressions of the party, are legal evidence against him. The law can never limit the number or kind of such indications.' " *Id. (quoting Johnson v. State,* 17 Ala. 618, 624 (1850)).

If the many accounts of the defendant's attempts to dissuade the victim from notifying the police and his precipitous departure from the hospital were credited by the jury at all, it must have also believed that he expected, at the very least, to be investigated for injuring the victim. To the extent that consciously hindering or delaying a police investigation by absenting oneself might be considered less probative than actually avoiding an imminent arrest, it would presumably be less prejudicial in the eyes of the jury as well. Obviously, neither demonstrates conclusively a defendant's motive for refusing to cooperate and submit to police investigation, but by the same token, neither carries with it the potential for unfair prejudice of, for instance, evidence of uncharged criminal misconduct. As the majority appears to acknowledge, the balancing of probativeness and prejudice must remain largely within the discretion of trial courts, without their being subject to the second-guessing of appellate courts.

Finally, I take issue with the majority's choice to review the trial court's evidentiary

ruling at all. In light of its determination that other evidence in the record ultimately renders this ruling inconsequential, the majority makes clear that its discussion of relevance amounts to nothing more than obiter dicta. While occasions may certainly arise in which it is helpful, or even important, for an appellate court to explain itself or provide guidance beyond the narrow rationale for its holding, this is clearly not one of them. Evidentiary rulings in general, and rulings on relevance in particular, are inherently fact-driven, with little application beyond the evidence in a particular case. To the extent that the majority intends to propose a rule of general applicability, narrowing the kinds of evidence acceptable to show consciousness of guilt, I consider such a proposal ill-advised outside the context of an actual case or controversy that will be impacted by the application of that rule.

Sound policy considerations support the exercise of judicial restraint in matters not necessary to the resolution of a live controversy. While I concur in the remainder of the majority's opinion and in its judgment, I do not join its dicta concerning consciousness of guilt.